CHARLES F. CARLSON, Appellant, *v.* THE PHŒNIX BRIDGE
COMPANY, Respondent.

Reasonable care, and not the highest efficiency which skill and foresight
can produce is the measure of a master's liability to his servant ; he
performs his whole duty by using as much care in the selection of
materials for the use of his servants as a man of ordinary prudence in
the same line of business would, acting with regard to his own safety,
use in supplying similar things for himself, were he doing the work.

If material of the best quality is purchased by the master, and there is
nothing in its appearance to indicate inefficiency, and tools, for the use
of the servant, are constructed therefrom by competent and skilled work-
men, the master discharges his duty, and is not liable for an injury to
the servant, caused by a breaking of the tool in consequence of a hidden
defect in the material.

In an action by an employe of defendant to recover damages for personal
injuries alleged to have been caused by defendant's negligence, the fol-
lowing facts appeared: Plaintiff, while in the performance of his duties,
was injured by the fall of an iron girder caused by the breaking of an
iron hook used in raising the girder.  The hook was one of a number
made for defendant for such use from a bar of iron purchased by defend-
ant of reputable dealers, and ordered as the "best refined" iron, which
was the best grade in the market.  All of the other hooks had been
used for the same work, and none proved to be weak or insufficient,
except the one in question, and this one, during the three months prior
to the accident, had been used in lifting girders similar to the one which
fell.  There was nothing in its external appearance to indicate that it
was weak, or not of the best material.   The break resulted from a
hidden defect in the iron, that could not have been discovered by an
external examination, and was not discovered in the process of making
the hook, which, when delivered to defendant's employes for use, was
supposed to be of the best material.  *Held,* that plaintiff was not entitled
to recover.

*Hegeman* v. *Western R. R. Co.* (13 N. Y. 1), distinguished.

Reported below, 55 Hun, 485.

(Argued March 9, 1892; decided March 25, 1892.)

APPEAL from judgment of the General Term of the Supreme
Court in the second judicial department, entered upon an order
made May 12, 1890, which affirmed a judgment in favor of
defendant entered upon a decision of the court on trial at
Circuit.

The nature of the action and the facts, so far as material, are stated in the opinion.

*J. Edward Swanstrom* for appellant. Upon an appeal from a judgment dismissing the complaint, the evidence is to be construed most favorably to the plaintiff. (*Harris* v. *Perry*, 89 N. Y. 308; *Clemence* v. *City of Auburn*, 66 id. 338.) The defendant was guilty of negligence in failing to use proper care to provide a safe and suitable hook for the work which the plaintiff was called upon to perform. (*McGovern* v. *C. V. R. R. Co.*, 123 N. Y. 287; *Pantzar* v. *T. F. I. M. Co.*, 99 id. 368.) The negligence of the defendant's blacksmith arose in the performance of a duty belonging to the defendant to perform as master, hence the defendant is liable for the manner of its performance. (*Bushby* v. *N. Y., L. E. & W. R. R. Co.*, 107 N. Y. 379; *Mann* v. *D. & H. C. Co.*, 91 id. 495; *Durkin* v. *Sharp*, 88 id. 227; *Fuller* v. *Jewett*, 80 id. 46; *Booth* v. *B. & A. R. R. Co.*, 73 id. 38; *Pantzar* v. *T. F. I. M. Co.*, 99 id. 368; *Leonard* v. *Collins*, 70 id. 90.) The General Term erred in holding that the defendant was not required to adopt any precaution in making the hook so long, as the best iron was purchased for the purpose. (*McGovern* v. *C. V. R. R. Co.*, 123 N. Y. 289.) The General Term erred in holding that the testimony of defendant's superintendant, that he purchased the best iron is controlling. (*C. N. Bank* v. *Diefendorf*, 123 N. Y. 200; *Elwood* v. *W. U. T. Co.*, 45 id. 49; *Kavanagh* v. *Wilson*, 70 id. 172; *Gildersleeve* v. *Landon*, 73 id. 609; *Koehler* v. *Adler*, 78 id. 201; *Wohlfahrt* v. *Beckert*, 92 id. 497.) The question of contributory negligence was, under all the circumstances, one of fact for the jury. (*Stackus* v. *N. Y. C. R. R. Co.*, 79 N. Y. 464; *Plank* v. *N. Y. C. R. R. Co.*, 60 id. 607; *Bassett* v. *Fish*, 75 id. 307; *Kain* v. *Smith*, 89 id. 379.) The plaintiff did not assume the risk of the accident by which he was injured. (*Bening* v. *Steinway*, 101 N. Y. 551; *Stringham* v. *Stewart*, 100 id. 526.)

*A. B. Boardman* for respondent. The inference of negligence cannot fairly and properly be drawn against the defend-

ant. (*Burke* v. *Witherbee*, 98 N. Y. 565.) The blacksmith's failure to cut the iron when it was cold was not, under the circumstances, negligence. (*Probst* v. *Delamater*, 100 N. Y. 266; *W. R. Co.* v. *McDaniels*, 107 U. S. 454; *Wright* v. *N. Y. C. R. R. Co.*, 25 N. Y. 566; *Baulec* v. *N. Y. & H. R. R. Co.*, 59 id. 366; *Dwight* v. *G. L. Ins. Co.*, 103 id. 358.)

BROWN, J. The plaintiff was an employe of the defendant, engaged in the construction of an elevated railway in Fulton street, in the city of Brooklyn, and while in the performance of his duties was injured by the fall of a heavy iron girder and brought this action to recover damages sustained from such injury.

For the purpose of lifting the heavy girders from the street to the elevated position they were to occupy in the structure the defendant used a movable derrick operated by steam power. The hoisting apparatus included a chain and hook.

The plaintiff described the customary method of raising the girders as follows : The hook was fastened into the girders first so as to raise them on edge, and then enough power was applied to raise them clear of the street, so that they could be placed on blocks. After they were placed on blocks, under their proper position in the structure, other tackle was used, the hook and chain being dispensed with, and they were raised into their permanent position. The immediate cause of the accident which injured the plaintiff was the breaking of the hook when the girder was being raised from the street, and the negligence charged upon the defendant was its failure to furnish a hook strong enough to sustain the weight of the girder.

The hook in question was one of a number (testified to be eight or more) made for use in the work of building the railway, by a blacksmith in the defendant's employ. They were made about three months prior to the accident from a bar of iron twenty-four feet long and one and three-quarter inches in diameter, purchased by defendant from Manning, Maxwell & Moore, reputable dealers in iron, and ordered as the "best refined," which was the best grade of iron in the market. All

of the hooks had been used in raising similar heavy girders and none of them were shown to have been weak or insufficient for the work required of them.

The one in question had been used during the three months previous to the accident to lift about two hundred girders similar to the one which fell upon the plaintiff, and there was nothing in its external appearance to indicate that it was weak or that the material was not of the best quality.

After the accident the iron at the point of fracture was discovered to be bad. The break was square across the shank and presented a bright appearance, without rust, and the proof tended to the conclusion that it resulted from crystalization in the iron, which could not be discovered by an external examination. It was not discoverable in the process of making the hook, and when delivered to the employes for use it was supposed to be of the best material.

The appellant claims and, on the trial, gave evidence to the effect that a customary test to ascertain the quality of a bar of iron could have been made by the blacksmith by nicking or cutting notches in the bar when cold with a chisel or cutter and then breaking it, or by bending it over an anvil. That if broken, the grain of the iron would have been disclosed, and by bending it, if crystalized, it would break, but if fibrous, it would bend. But it was conceded that such a test could not be applied to the particular piece of iron which was used in making the hook without either destroying it or greatly impairing its strength and efficiency. These tests were not applied to any part of the bar in question.

It appeared from uncontradicted testimony introduced by the defendant that all refined iron is subjected to frequent tests during the process of manufacture, and represents in the market the highest efficiency of the manufacturer's skill, and that subsequent to the accident to the plaintiff a piece of the bar in question, reduced in diameter to one and one-half inches, was tested and shown to have a breaking strength of forty-six tons, or more than four times the weight of the girder by which plaintiff was injured.

This statement of the facts brings us to the point of difference between the parties at the trial.

The plaintiff claimed that the defendant was negligent in omitting to apply to the bar of iron from which the hook was made the test of cutting and breaking or bending, which he claimed would, had it been made, have disclosed the bad quality of the material.

The defendant contended (1) that it was justified so far as the quality of the iron was concerned, in relying upon the fact that it was sold in the market as the best refined by a reputable merchant, and (2) that the defect being a latent one and confined so far as the testimony shows to a very small part of the bar, the jury would not have been authorized to find that the tests aforesaid, if they had been made, would have disclosed the defect complained of.

The rule contended for by the appellant has been applied in cases of injury to passengers. *Hegeman* v. *Western Railroad Co.* (13 N. Y. 1), was a case of the breaking of the axle of a car. The defect in the iron was latent and could not have been discovered by any external examination. This court held that the defendant was liable for any defect happening during the construction of the car and axle which could have been detected by the manufacturer, though it could not have been detected after they were completed.

But the contrary is held in *Ingalls* v. *Bills* (9 Metc. 1), which was a case of injury to a passenger in a stage-coach caused by the breaking of an iron axle from an internal defect not apparent by external inspection, and a judgment for the plaintiff was reversed, the court holding that the defendant was not liable when the accident arose from a hidden and internal defect not apparent to a careful examination and the exercise of a most vigilant oversight.

*Hegeman's* case presents an extreme application of the rule governing the liability of common carriers of passengers. But the rule applicable in cases of master and servant is more favorable to the master. Reasonable care and not the highest efficiency which skill and foresight can produce is the measure

of the master's liability, and he performs his whole duty by using as much care in the selection of materials for the use of his servants as a man of ordinary prudence in the same line of business would, acting in regard to his own safety, use in supplying similar things for himself were he doing the work. (*Marsh* v. *Chickering*, 101 N. Y. 390; Sherman & Redfield on Negligence, § 195.)

A master who puts a tool or implement into his servant's hand may procure it in several ways. He may buy it ready made of a dealer, procure it to be manufactured or purchase the materials and manufacture it himself. Liability for an injury resulting from a defect in the materials of a tool will be determined by the same rule in each case. If a hook like the one used in the present case had been procured ready made in the market or manufactured at a foundry, the defendant would necessarily have been compelled to rely upon the dealer and manufacturer for the quality of materials used. A completed hook ready for use could neither be cut into with a chisel, or bent over an anvil, without impairing its strength, or perhaps destroying it altogether. A test of that character applied to one of a lot would be no guaranty of the quality of the others. To apply such a test, therefore, to tools procured in that way is impracticable, and such articles are not usually tested before they are put in use. The modern industrial system rests upon confidence in others. A railroad corporation cannot well apply such tests to the materials of which its cars and engines are made, or to the rails which form its tracks. Reasonable inspection is necessary and required. But when articles are manufactured by a process approved by use and experience and apparently properly finished and stamped, it is not usual for them to be tested again in quality, and such examinations are not generally required by law. If materials of the best quality are purchased and tools constructed from them by competent and skillful workmen, if there is nothing in the appearance of the material to indicate inefficiency, men in the ordinary affairs of life use them and place them in the hands of their servants, and there were no circum-

stances surrounding the manufacture of the hook in question, to induce a prudent man to depart from the usual course, or to adopt extraordinary care and precaution.

All the best iron and steel is made in a few large establishments. The evidence shows that all practicable tests are used during the process of manufacture, and the completed product represents the best article that can be produced. It passes into the hands of dealers, and so reaches the consumer. If the best refined iron is required, the purchaser may assume that the tests necessary to produce that article have been properly made and the work properly done. He must see that the work he undertakes to do is properly performed, but if the tool breaks from an internal defect in the material, not apparent from an external examination of the iron, or in the process of making the tool, the master is no more responsible than he would be if he had purchased it ready made in the market, or if it had broken from an external apparent defect produced by use of which he was not chargeable with knowledge.

The evidence in the case shows that the several hooks made by the blacksmith were made from pieces of iron about eighteen inches long, cut from the bar purchased by the defendant's superintendent. Of the hooks other than the one which broke, it appears that they were used in lifting the heavy girders which formed a part of the structure for the railway. None of them were shown to have broken, or to have been weak or defective. The piece of the bar not used was shown to have been of the best quality, and that it possessed an elasticity and strength far beyond that required in lifting the girder in question. The hook that broke, did so from a weakness in the iron at the particular point of fracture. There is no evidence to show that the bad quality of the iron there observable extended to any other part of the bar, and it is obvious, we think, that if the test of cutting and bending the bar while cold had been applied, it could not necessarily have disclosed the defect in question. The evidence does not show what part of the bar the piece of iron from which the

hook was manufactured was taken, and if the cutting test had been applied to either end or the middle of the bar, the jury could not have found that it would have disclosed the defect complained of. A conclusion that the defect would have been discovered, would have had no other basis than speculation or conjecture, and evidence of that character would be insufficient to sustain a judgment.

We are of the opinion that the complaint was properly dismissed, and the judgment should be affirmed.

All concur.

Judgment affirmed.