JACOB SMITH, Respondent, *v.* THE NEW YORK CENTRAL AND
HUDSON RIVER RAILROAD COMPANY, Appellant.

NEGLIGENCE — LIABILITY OF MASTER FOR INJURY RESULTING TO SERV-
ANT FROM LATENT DEFECT IN APPLIANCE.   A master is not liable to a
servant for an injury to the latter in consequence of a latent defect in an
appliance, where the evidence shows that the material furnished by the
master for the manufacture of the appliance, and out of which it was
made, was proper; that there was nothing in its appearance to indicate
inefficiency, and that it was made by competent and skilled workmen and
was subjected to frequent and thorough inspections of such a character
as to reveal any flaw or defect that could be discovered in that way.

*Smith* v. *N. Y. C. & H. R. R. R. Co.*, 33 App. Div. 628, reversed.

(Argued October 8, 1900; decided November 20, 1900.)

APPEAL from a judgment of the Appellate Division of the
Supreme Court in the fourth judicial department, entered
August 2, 1898, affirming a judgment in favor of plaintiff
entered upon a verdict, and an order denying a motion for a
new trial.

The nature of the action and the facts, so far as material,
are stated in the opinion.

*Charles A. Pooley* for appellant.   Exceptions to the rulings
of the court on objections to the admission of evidence were
taken which call for a reversal.   (*Strohm* v. *N. Y., L. E. &
W. R. R. Co.*, 96 N. Y. 305; *Tozer* v. *N. Y. C. & H. R.
R. R. Co.*, 105 N. Y. 617; *Jewell* v. *N. Y. C. & H. R. R.
R. Co.*, 27 App. Div. 500; *Kleiner* v. *T. A. R. R. Co.*, 162
N. Y. 193.)   No negligence was shown on the part of the
defendant.   (*Stringham* v. *Hilton*, 111 N. Y. 188; *De Graff*
v. *N. Y. C. & H. R. R. R. Co.*, 76 N. Y. 125.)   The servant
seeking to recover for an injury takes the burden upon him-
self of establishing negligence on the part of the master and
due care on his own part.   (Wood on Mast. & Serv. § 382;
*De Graff* v. *N. Y. C. & H. R. R. R. Co.*, 76 N. Y. 77;
*France* v. *R., W. & O. R. R. Co.*, 88 Hun, 318; *Crown* v.
*Orr*, 140 N. Y. 450; *Wright* v. *N. Y. C. & H. R. R. R. Co.*,

25 N. Y. 566.) The employer is bound to exercise due care and diligence in furnishing for the use of his employees fit and safe implements and machinery; he is not held to be a guarantor of their safety, and the onus is upon the plaintiff to show some negligence on the part of the employer in respect to the performance of the duty resting upon him. (*Painton* v. *N. C. R. Co.*, 83 N. Y. 7; *Cahill* v. *Hilton*, 106 N. Y. 518; *Cosulich* v. *S. O. Co.*, 123 N. Y. 118; *Devlin* v. *Smith*, 89 N. Y. 476; *Fuller* v. *Jewett*, 80 N. Y. 53; *Warner* v. *E. R. R. Co.*, 39 N. Y. 471; *Probst* v. *Delamater*, 100 N. Y. 373; *Leonard* v. *Collins*, 70 N. Y. 90; *Kern* v. *D. R. Co.*, 125 N. Y. 50; *Cregan* v. *Marston*, 126 N. Y. 568.)

*Morris Cohn, Jr.*, for respondent. The plaintiff did not assume the risk of the defective ring. (*Ford* v. *L. S. & M. S. R. Co.*, 124 N. Y. 498.) It was the master's duty to use reasonable care to furnish to his servant a reasonably safe and suitable ring for the purpose for which such ring was to be used, and this duty could not be delegated by the master to any fellow-servant. (*Painton* v. *N. C. R. Co.*, 83 N. Y. 7; *Bryer* v. *Foerster*, 9 App. Div. 542; *Rettig* v. *F. A. Co.*, 6 Misc. Rep. 328; *Solarz* v. *M. Ry. Co.*, 8 Misc. Rep. 656; *Fuller* v. *Jewett*, 80 N. Y. 46; *Probst* v. *Delamater*, 100 N. Y. 266; *Ellis* v. *N. Y., L. E. & W. R. R. Co.*, 95 N. Y. 552; *Scherer* v. *H. Mfg. Co.*, 86 Hun, 37; *Green* v. *Banta*, 16 J. & S. 156; *Benzing* v. *Steinway*, 101 N. Y. 550.) The duty of inspection rested upon the defendant, and it was for the jury to say whether the inspection made was sufficient and proper. (Bailey on Mast. & Serv. 93; S. & R. on Neg. §§ 194–196; *De Graff* v. *N. Y. C. & H. R. R. R. Co.*, 76 N. Y. 125; *Cutridge* v. *M. P. R. Co.*, 105 Mo. 520; *Bailey* v. *R., W. & O. R. R. Co.*, 139 N. Y. 302; *Sneider* v. *Treichler*, 56 Hun, 309; *Morton* v. *R. R. Co.*, 81 Mich. 483; *Ballard* v. *Hitchcock*, 71 Hun, 582; *Bucher* v. *Pryibil*, 19 App. Div. 126; *Spicer* v. *S. B. I. Co.*, 138 Mass. 426; *U. P. Ry. Co.* v. *Daniels*, 152 U. S. 684; *Eaton* v. *N. Y. C. & H. R. R. R. Co.*, 163 N. Y. 391.) The exceptions

referred to by appellant do not justify the reversal of the judgment and the granting of a new trial. (*Tomaselli* v. *G. C. Co.*, 9 App. Div. 127.)

O'BRIEN, J. The plaintiff recovered a verdict in this action of $10,800 for injuries, consisting of a broken ankle and various bruises, while engaged in the defendant's service as a blacksmith. The broken ankle is a permanent disability. The others were temporary, and though painful for a time have been substantially healed. The accident resulting in the injury occurred on the 28th day of July, 1895. It was caused by the breaking of a ring in a chain which was one of the appliances used in the job upon which the plaintiff was then engaged. There is no substantial dispute as to the cause of the accident, or as to the manner in which it occurred. Both sides state the facts in the same way and substantially as follows: At Spuyten Duyvil the defendant has a drawbridge over the creek. When vessels are passing the bridge is hauled up from a horizontal to a perpendicular position, and stands against the towers which contain the appliances for opening it. These towers are about 75 feet high, and are provided with several weights, equal in all to the weight of the bridge; and an engine about half way up, which regulates the raising and lowering of the bridge. These weights are attached to a heavy wire cable extending from the weights to the further end of the bridge, so that as the bridge raises the weights lower. The wire cable passes through all the weights and is made fast to the bottom one by splaying out the strands of wire on the under side of the weight and then pouring in babbit metal to fill the hole and hold the metal.

The wire cable had become worn by use, and it was determined to replace it with a new one. In order to remove the old cable the bridge gang had securely blocked up the weights at the top of the tower, and had cut off the cable, leaving the stub end in the lowest weight, and had then rigged a chain about the timber at the top of the tower and a pulley block and fall attached to the weight, and lowered the weight to

the ground. This was done one evening, and after melting out the babbit metal the weight was brought again to the tower, and the same rigging which had been used to lower it, and which had remained where it was over night, was again attached to the weight and they proceeded to hoist the weight back to its place. The foreman stood at the hoisting engine standing on the ground near the foot of the tower, and as the weight began to lift it became caught under a timber of the tower, so that it had to be dislodged. The foreman called plaintiff to dislodge it and guide the weight from under the timber, and then told him to get upon it and ride it up so as to keep it clear from other projecting timbers of the tower. The plaintiff mounted it and rode up about 30 feet, when the plaintiff says the weight must have caught on a beam, and the ring of the chain at the top of the tower broke, precipitating the plaintiff and the weight to the ground, resulting in the injury complained of. The weight was three feet long, twenty inches wide and sixteen inches thick, and in raising it it was so fastened to the fall that the plaintiff could stand upon the flat surface.

The gang of men that the plaintiff worked with was called the bridge gang, and they had been furnished with every appliance necessary for the performance of the work. The plaintiff was attached to this gang as the blacksmith, in which capacity he had been in defendant's service for five years prior to the accident. The ring in question had been in use about two years. It was made of the best material by competent and skilled workmen, and had been inspected by competent men several times during the period it was in use, when proper tests were applied to discover any flaw or defect in the iron, and had been examined before use on this occasion. It broke because subjected to an unusual strain, due to the circumstance that the weight was caught under the timbers of the tower.

The court charged the jury that it appeared without dispute in the evidence that the material furnished by the master for the manufacture of the ring, and out of which it was made,

was proper material; that there was nothing in its appearance to indicate inefficiency, and that it was made by competent and skilled workmen. There was some proof given by the plaintiff tending to show a concealed defect in the iron of the ring at the place where it broke, due to the presence of dirt or sulphur, or both within the body of the metal. The weld of the ring made by the workman did not part, but the metal broke in such a manner as to leave part of the weld on either end of the break.

The only question submitted to the jury, as I understand the charge, was whether this concealed defect, if it existed, could have been discovered by the workman who made the ring, in the exercise of ordinary care, and possibly the other question, whether there was proper inspection of the chain and ring while in use. The defendant's counsel at the close of the plaintiff's case moved for a nonsuit on various grounds, and among others that there was no proof of negligence on the part of the defendant to which the accident could be attributed. The same motion was renewed at the close of the whole case, and in both instances denied and an exception taken.

It seems to have been assumed by the court and by counsel on both sides that if there was any defect in the iron at all it was a concealed defect and the proof to that effect was undisputed. There is no dispute in the evidence that the inspection was made by competent men in the defendant's employ and that the inspection was frequent and thorough and of such a character as to reveal any flaw or defect in the iron that could be discovered in that way. There is no basis in the proof for imputing negligence to the defendant for omission to cause the chain to be inspected in a reasonable and proper manner, and the court having instructed the jury, as we have seen, that there was nothing in the appearance of the iron from which the ring was made to indicate any defect and that the workman employed to make it was competent and skillful, it is difficult to see how the jury could have found that the defendant was negligent in not discovering the defect

if it existed. The facts which the learned judge in his charge assumed as established by the undisputed proof really acquitted the defendant of the charge of negligence. (*De Graff* v. *N. Y. C. & H. R. R. R. Co.*, 76 N. Y. 125; *Burke* v. *Witherbee*, 98 N. Y. 562; *Cahill* v. *Hilton*, 106 N. Y. 512; *Flood* v. *W. U. Telegraph Co.*, 131 N. Y. 603; *Probst* v. *Delemater*, 100 N. Y. 266; *Hart* v. *Naumburg*, 123 N. Y. 641; *Kern* v. *De Castro & D. S. Refining Co.*, 125 N. Y. 50; *Cregan* v. *Marston*, 126 N. Y. 568; *Carlson* v. *P. B. Co.*, 132 N. Y. 273; *Harley* v. *Buffalo Car Mfg. Co.*, 142 N. Y. 31.)

But if this was a much stronger case on the merits than it evidently is, we would be obliged to reverse the judgment upon exceptions to rulings at the trial.

(1) The court admitted proof by the plaintiff, under defendant's exception, to show that the person in charge of the engine on the day of the accident and another person who had charge of the engine generally, but was absent on the day of the accident, were not licensed engineers under chapter 643 of the Laws of 1886, § 311. That statute does not make the license proof of the engineer's competency in an action of negligence against the master, nor does the absence of a license in such a case show that he was incompetent. Common-law proof may be given of that fact when in issue. Both of these persons had been in the service of the defendant many years in the same capacity, and there was no proof tending to show that either was not in fact a competent engineer. Moreover, it was not alleged or claimed that the accident was in any degree to be attributed to the conduct of the engineer, but solely to the breaking of the ring. In fact, the court refused to submit any such question to the jury. The testimony, however, remained in the case, and was calculated to mislead the jury in considering the two questions that were submitted. They might very well conclude that they were at liberty to pass upon any question in the case within the range of the testimony.

(2) The plaintiff's counsel propounded to a physician called

to describe the extent of the injury the following question : " State the comparative use that he would have of his present foot and an artificial foot ? " The question was objected to as incompetent, but the objection was overruled and an exception taken. The witness answered that the plaintiff could get around better and be more useful with an artificial foot. The question of damages was of course submitted to the jury, and this ruling, instead of confining them to the injury as it was, permitted them to speculate upon the plaintiff's condition after the foot was amputated and replaced by an artificial one. The testimony was prejudicial to the defendant, since it had a tendency to confuse and mislead the jury. As it remained in the case without any explanation by the court they might very well have assumed that they were at liberty to award as part of the damages compensation to the plaintiff for the pain and danger of amputation, as well as the expense of supplying himself in the future with the artificial foot, a consequence which it was not claimed would follow as the natural or necessary result of the injury.

(3) There were several other exceptions in the record to the admission of proof concerning the conduct and statements of the plaintiff's co-servants engaged with him in raising the bridge at the time of the accident. The court in the charge eliminated from the case all questions of negligence on the part of the defendant arising from the selection, employment or retention of these co-servants, and no such question was submitted to the jury, but the testimony referred to remained in the case without note or comment, and it is quite impossible to say how far it influenced the jury as to the result, if at all, and since they may all be obviated upon another trial it is not needful to consider them. The judgment entered upon the verdict was affirmed by a divided court, and, hence, the sufficiency of the proof to establish the cause of action is open to review in this court, or, more properly, the question whether there is any evidence at all tending to sustain the allegation of negligence. The plaintiff no doubt sustained a

very severe injury which might well appeal to the justice and sympathy of the master, but unless the record is materially changed upon another trial there is no basis for a legal liability on the part of the defendant, since it is not chargeable with negligence upon the proof now before us.

The judgment should be reversed and a new trial granted, costs to abide the event.

LANDON, J., concurs; PARKER, Ch. J., HAIGHT, MARTIN and VANN, JJ., concur on the ground that there was not sufficient evidence to go to the jury; BARTLETT, J., concurs in result.

Judgment reversed, etc.