EDWIN O. TRASK *vs.* HALLOWELL GRANITE WORKS.

Kennebec.     Opinion March 23, 1910.

*Negligence.     Wharves.     Duty to Employees of Others.     Injury to Employee of
Another.     Defective Appliances.     Ordinary Care.     Damages.*

The owner of a wharf was bound to use ordinary care to see that it was
reasonably safe as to a stevedore employed by another in unloading coal
at the wharf.

Evidence *held* to sustain a finding that a stevedore, injured by a hoisting
apparatus falling upon him, was not guilty of contributory negligence.

The term "ordinary care," as applied to one's duty to provide reasonably
safe appliances furnished a third person for the use of his employees, is a
relative term; diligence commensurate with the danger being required.

Evidence *held* to show that the owner of a wharf was negligent toward a
stevedore employed by another in unloading coal at the wharf in selecting
the material used in hoisting apparatus which fell upon the employee.

The duty of one to use ordinary care to provide reasonable safe appliances
furnished a third person for the use of his employees, cannot be delegated.

*Held:*   That $1,750 was not excessive recovery for personal injuries involv-
ing a compound fracture of one of the bones of the left forearm, slight
injury to the foot, and various bruises, where the fracture united slowly,
the rotary motion of the arm was impaired, and the injured person may
not be able to resume his occupation as a stevedore, and incurred $132
medical expenses.

On report.   Judgment for plaintiff.

Action on the case to recover damages for personal injuries
sustained by the plaintiff and caused by the alleged negligence of
the defendant.   Plea, the general issue.   At the conclusion of the
evidence, the case was reported to the Law Court for determination
with the stipulation "that if a verdict for the plaintiff would be
allowed to stand upon the law and the evidence, the court are to
render judgment for the plaintiff and assess the damages with powers
of a jury; otherwise, judgment for the defendant."

The case is stated in the opinion.

*Heath & Andrews, and W. H. Fisher,* for plaintiff.

*Orville Dewey Baker, and Anson M. Goddard,* for defendant.

SITTING:  EMERY, C. J., WHITEHOUSE, SAVAGE, SPEAR, CORNISH, KING, JJ.

CORNISH, J.   This is an action of tort for personal injuries sustained by the plaintiff on November 15, 1905, while unloading coal on defendant's wharf in Hallowell.   At the close of the evidence the case was reported to this court with the stipulation "that if a verdict for the plaintiff would be allowed to stand upon the law and the evidence, the court are to render judgment for the plaintiff and assess damages with powers of a jury; otherwise judgment for the defendant."   The effect of this stipulation is to make it incumbent upon the court to determine whether a verdict, assumed to have been rendered for the plaintiff, would be manifestly wrong.   The following facts, necessary to a clear understanding of the case are admittedly true.

The defendant was the owner of the wharf which was equipped with staging, platform and shears for the unloading of coal from vessels and at the time of the accident a cargo was being unloaded for the Street Railroad Co., on a cooperative plan by one Jones, a stevedore, and his helpers, among whom was the plaintiff.   The staging, platform and shears were permanent structures and a part of the wharf property.   The staging was thirty feet long and built at a sufficient height to allow coal hoisted from the vessel to be wheeled and emptied into the top of the coal sheds.   A suspended platform projected from the staging to a point above the hold of the vessel, to enable the unloader to catch the hoisting rope and swing in and empty the bucket.   The hoisting apparatus was known as shears, performing the office of a derrick but differently constructed. They consisted of two pieces of hard pine timber each thirty-eight feet long, ten feet apart at the base and fitted together at the point so as to form a V.   The base of each timber was hinged to uprights on the staging, while the point of the V, which is the top of the shears, rested at an incline over the platform and over the hold, and was held in suspension, when in use, by two guys each extending from a so-called dead man on the shore to an eyebolt near the junction of the timbers.   These bolts passed through the timbers

with a plate and nut on the lower side.　Beneath the point of the shears was a gin block, over which ran the hoisting rope controlled by a stationary engine on a near-by float.　The following diagram giving a side view, may be of assistance.

While the plaintiff was standing on the platform, beneath the shears, attending to his duty as the unloader, both eyebolts broke simultaneously, precipitating the shears upon him and causing the injuries for which this suit was brought.　The breaking of the eyebolts was admittedly the proximate cause of the accident and the question at issue is whether such breaking was due to the negligence of the defendant.　The jury having assumedly said yes, is it the duty of the court under the law and the evidence to reverse their finding?　It is not seriously claimed by the defendant that because the plaintiff was at work under a contract with the Railroad Company, he cannot recover in this action.　The case does not show clearly what the arrangement was between the two companies, but the fair inference is that the Railroad Company was using the wharf under some sort of contract with the defendant and if so, the defendant as owner owed to the Railroad Company the duty of reasonable diligence in seeing to it that its wharf and fixtures were in a reasonably safe condition, a duty which it also owed to the employees

of the defendant whether such employees were receiving wages or working under a contract. *Johnson* v. *Spear*, 76 Mich. 139, 15 Am. St. Rep. 298; *Nickerson* v. *Tirrell*, 127 Mass. 236; *Moore* v. *Stetson*, 96 Maine, 197.

In this connection it should also be said that the evidence would justify a finding by a jury that the plaintiff was not guilty of contributory negligence.

This brings us back to the single question of the defendant's negligence, and whether the defendant fulfilled its duty in the selection of the material used in the construction of the eye bolts. Was the quality of the iron what it should have been?

These shears were constructed in the spring of 1905, a few months before the accident occurred. The defendant's general superintendent Mr. Hunt, employed one Kelley, a carpenter of long experience, to build them, the company paying for all labor and materials and dictating neither as to specific materials nor cost, but instructing him "to use the best of everything." Kelley employed one Dick, an experienced blacksmith to do the iron work, and to make the bolts of the same grade as used in several other sets previously constructed, that is, refined iron, but to make them one inch in diameter instead of seven-eighths,— because the timbers were of hard pine and therefore heavier than usual. These directions were carried out and Dick made them of ordinary refined iron that he had on hand. The trade knows three qualities of refined or wrought iron, refined, best refined and Norway, varying in tensile strength from 20,000 to 60,000 pounds to the square inch. The amount of strain to which these bolts were subjected was not definitely stated as it varied somewhat, and depended not only on the weight of the shears and of the bucket with its contents, but on the velocity with which the load was started and the strains caused by the catching of the bucket on parts of the vessel in its upward course.

The plaintiff claims that the use of this untested refined iron under the circumstances was not consistent with the defendant's duty. The measure of the defendant's liability was ordinary care, a relative term and dependent upon many considerations.

"Reasonable care and vigilance vary according to the exigencies which require vigilance and attention. They relate to the work to be done, to the instrumentalities to be used, to the dangers that may result from their use, to the varying duties owed by those who supply or use them." *Caven* v. *Granite Co.*, 99 Maine, 278. The greater the danger, the greater the vigilance required to meet the standard of ordinary care. Precaution must increase as the peril increases. Where life and limb are at stake due care requires that everything be done that gives reasonable promise of the preservation of such life or limb. Under some conditions the best material may be none too good, and what under less perilous surroundings would be deemed extraordinary diligence, may be but ordinary care where the dangers are imminent. *Raymond* v. *Railroad Co.*, 100 Maine, 529. The rule itself is simple, its application is sometimes attended with difficulty. Applying it here, however, we think the standard has not been met. The peril was grave and apparent. Upon the strength of these eyebolts depended the safety of men working on the platform beneath. Commensurate care and foresight were demanded of the defendant. The superintendent Mr. Hunt was aware of it. He was accustomed to the use of derricks at the quarries and he directed Kelley to "use the best of everything." Had Kelley followed these instructions a jury might well find that due care had been observed. But he did not. The poorest grade was used instead of the best and the defendant took no pains to ascertain the fact. It apparently assumed that its orders would be carried out and made no further inquiries or inspection.

An examination of the broken bolts shows a clean break, without a flaw, but its cause is in controversy. The plaintiff claims the break to have been caused by crystallization, which is produced by use, strain and vibration, and which goes on more rapidly in ordinary refined iron than in best refined or Norway. The poorer the iron the more rapid the crystallization. The defendant contends that the break was due not to crystallization after manufacture but to a latent defect, known as cold shorts, produced in manufacture, and for such defect it ought not to be held liable. The evidence

would warrant a jury in adopting the plaintiff's theory rather than the defendant's and intelligent and credible witnesses testified that such a low grade of iron was not suitable for such work. But assuming the defendant's theory to be true, it also appeared that cold shorts were much more likely to exist in the lower grades, and further, that their presence could be detected by simple and practicable tests. No tests whatever were applied to the iron of which these bolts were made and witnesses on both sides agreed that these particular pieces were of a very poor quality, even of ordinary refined. Taking either theory it is difficult to escape the conclusion that the defendant's care was not proportionate to the risk. Kelley claimed to have used ordinary refined iron in many other shears constructed by him and without ill results, but in precisely how many of the same plan, was in controversy. While his claim if granted, would have weight on the question of due care, it would not be controlling. If the material was in fact unsuitable as the plaintiff's witnesses contended, its previous use would not make it suitable, and accidents may have been avoided because good fortune had selected better samples from the lowest grade. *Carlson* v. *Phoenix Bridge Co.*, 132 N. Y. 273, 30 N. E. 750, is strongly relied on by the defendant, but the vital element present in that case and lacking in this, marks the distinction, for the iron there purchased was the "best refined" the best grade then in the market.

The defendant also contends that its duty was fulfilled when it employed a competent and experienced man to do the work. But its responsibility could not be so easily shifted, because the duty resting upon it could not be delegated to another. Kelley was the servant of the defendant, employed to do this work and for that work the defendant itself was responsible. His work was its work.

A clear and wide distinction separates this case from a line of decisions where competent machines have been bought in the market from reputable manufacturers. No corporation is obliged to manufacture all the machines used by it. It may go into the open market and purchase from a manufacturer, and if reasonable care is used, negligence will not attach to the purchaser although it may

later develop that the maker was careless and used unsuitable materials or did imperfect work. Under this rule fall many of the cases cited by the defendant, as the defective block in *Roughan* v. *Boston and Lockport Block Co.*, 161 Mass. 24; the dynamite caps in *Shea* v. *Wellington*, 163 Mass. 364; the duster machine in *Reynolds* v. *Merchants Woolen Co.*, 168 Mass. 501. Such cases bear no analogy to the case at bar, nor do the other cases cited by the defendant, where the question involved was whether the owner of a building or an independent contractor was liable to injuries caused during the construction or repair of a building, as *McCarthy* v. *Second Parish of Portland*, 71 Maine, 318; *Keyes* v. *Second Baptist Church*, 99 Maine, 308. Kelley and Dick were not independent contractors but employees, and the accident did not occur while the shears were in process of construction but after their completion. For the completed machine the master was responsible. *Moynihan* v. *Hills Co.*, 146 Mass. 586.

A careful study of all the evidence leads to the conclusion that a verdict for the plaintiff should not be set aside.

The plaintiff's injuries consisted of a compound fracture of one of the bones of the left forearm, a slight injury to the foot and various bruises. The fracture was slow in uniting and was attended for a considerable time by a suppurating wound. The rotary motion has been somewhat impaired. It appeared that the plaintiff might not be able to follow his occupation as stevedore, but could do other kinds of labor. Considering the medical expenses which amounted to $132, and all other legal elements of damage, it is the opinion of the court that a verdict for $1,750 would have been compensatory.

*Judgment for plaintiff for $1,750.*