HEATH, Respondent, vs. STEWART and another, Trustees, Appellants.

*May 16 — June 20, 1895.*

*Railroads: Injury to person at street crossing: Negligence: Contributory negligence: Dangerous speed: Damages.*

1. Plaintiff was run into and injured by a train while driving a four-mule team with a heavy load of lumber across defendants' tracks on the main street of an unincorporated village. The evidence — showing, among other things, that there were four separate tracks about thirty feet apart crossing the street; that plaintiff was not familiar with the locality; that as he approached his view to the north, whence the train came, was obstructed by a building and by a box car standing on the first track; and that he stopped to look and listen at the last place where he could get a view to the north before commencing to cross the tracks — is *held* to sustain

Heath vs. Stewart and another.

a finding of the jury that plaintiff was not guilty of contributory negligence, although, perhaps, he did not look to the north immediately after emerging from behind the car on the first track. *Nelson v. D., S. S. & A. R. Co.* 88 Wis. 392, distinguished.

2. Findings by the jury that but one whistle was sounded; that the bell was not rung continuously; that the train was run at the unnecessarily dangerous speed of thirty-five miles an hour; and that these acts and omissions constituted negligence on the part of the defendant and were the proximate cause of the accident, are also *held* to be sustained by the evidence.

3. Although the statute limiting the rate of speed of trains in cities and villages was inapplicable because the village was not incorporated, yet it was a question for the jury whether, under the circumstances, the speed was negligently high.

4. An award of $6,000 damages for permanent injuries to the spine, *held* not excessive.

APPEAL from a judgment of the circuit court for Clark county: W. F. BAILEY, Circuit Judge. *Affirmed.*

The plaintiff sues to recover damages for personal injuries. On the 3d day of February, 1887, he was driving a four-mule team attached to a pair of bobsleighs, with a heavy load of hardwood lumber thereon, across the railway tracks operated by the defendants at the village of Spencer in Marathon county, when he was run into by a train and seriously injured. A judgment in favor of plaintiff upon a former trial of the case was reversed by this court for error in the admission of evidence, and will be found reported under the title of *Abbot v. Heath*, 84 Wis. 314. The negligence on the part of defendants' servants which was claimed by the plaintiff as a ground for recovery consisted in the leaving of a freight car within the limits of the highway in such a manner as to obstruct the view of the track, and in failing to give proper signals of the approach of the train, and in running it at a dangerous and negligent high rate of speed, and in failing to keep a proper lookout.

The jury found the following special verdict: "(1) Was the plaintiff injured by reason of a collision with an engine

and train operated by the defendants on the 3d day of February, 1887, at the intersection of their main track of road and Clark street, so called, in the village or hamlet of Spencer? *Ans.* Yes. (2) Was the whistle upon said engine blown prior to its approach to said Clark street crossing? *A.* Yes. (3) If your answer to the preceding question shall be 'Yes,' then state how many times. *A.* Once. (4) Was the bell upon said engine ringing continuously from the whistling-post crossing to the time when the engine was reversed? *A.* No. (5) If your answer to the preceding question be 'Yes,' then state how near to the Clark street crossing it continued to ring. *A.* ——. (6) At what rate of speed was the train in question moving at the time the engine was reversed? *A.* Thirty-five miles per hour. (7) Was such rate of speed unnecessarily dangerous to travelers upon Clark street who might have occasion to cross said tracks at the point of intersection? *A.* Yes. (8) Could the plaintiff, if he looked, have seen the train when he was between Bresnahan's saloon and the box car, if such train was within 1,500 feet of Clark street crossing? *A.* No. (9) Could the plaintiff, if he looked, have seen the train after passing the box car, in time to have stopped his team before crossing? *A.* No. (10) As the plaintiff approached the track at Clark street, did he look northward and listen to ascertain if a train was approaching? *A.* Yes. (11) At what place or places, with reference to Bresnahan's saloon and the box car, did he so look, if your answer to the preceding question shall be 'Yes'? *A.* In front of Bresnahan's saloon. (12) How many feet west of the main track was he when he first saw or learned the approach of the train? *A.* Eighteen feet. (13) Were the acts or omissions on the part of the defendants' servants, if any such shall be the result of your answers to the preceding questions, such acts or omissions as constituted a want of ordinary care under the circumstances on their part? *A.* Yes. (14) Were such acts or omissions

a proximate cause of the plaintiff's injuries? *A.* Yes.
(15) Was the plaintiff guilty of any want of ordinary care
which contributed to his injuries, in the manner in which
he approached or attempted to pass over the track? *A.* No.
(16) Are the injuries which the plaintiff received as a result
of such collision permanent in their character? *A.* Yes.
(17) If your answer to the preceding question shall be ' Yes,'
then state what particular injury is so permanent. *A.* In-
juries to the spine. (18) What sum will compensate the
plaintiff for the injuries he sustained? *A.* $6,000."

From judgment in favor of the plaintiff on this verdict
the defendants appealed.

For the appellants there were briefs by *Howard Morris*
and *Thomas H. Gill*, attorneys, and *Philip S. Abbot*, of
counsel, and oral argument by *Mr. Abbot* and *Mr. Gill*.
To the point that plaintiff was guilty of contributory negli-
gence, they cited *Nelson v. D., S. S. & A. R. Co.* 88 Wis.
392; *Williams v. C., M. & St. P. R. Co.* 64 id. 1; *Seefeld v.
C., M. & St. P. R. Co.* 70 id. 216; *McKinney v. C. & N. W.
R. Co.* 87 id. 282; *Houghton v. C. & G. T. R. Co.* 99 Mich. 308.

For the respondent there was a brief signed by *Fethers,
Jeffris & Fifield*, of counsel, and *Ring & Youmans*, attor-
neys, and oral argument by *M. C. Ring* and *O. H. Fethers*.
They argued, among other things, that it is the duty of the
railroad when crossing a populous street in a city or village
to approach it at a moderate rate of speed, and to give
timely warning to those passing along the street. *Butler
v. M. & St. P. R. Co.* 28 Wis. 487, 498–9; *Kinney v. Crocker*,
18 id. 75, 78; *Ferguson v. Wis. Cent. R. Co.* 63 id. 145; *Con-
tinental Imp. Co. v. Stead*, 95 U. S. 161, 164; *Philadelphia
& T. R. Co. v. Hagan*, 47 Pa. St. 244; *Beisiegel v. N. Y. C. R.
Co.* 34 N. Y. 622. This is the duty at common law, inde-
pendent of statute. *Chicago & R. I. R. Co. v. Still*, 19 Ill.
499; *Wakefield v. C. & P. R. R. Co.* 37 Vt. 330. Where the
view of the crossing is obstructed, it is the duty of the rail-

road company to use still more care, and so obstructing the view by leaving empty cars on the side track in such a position that they obscure the view of the crossing may be negligence. *Kissinger v. N. Y. & H. R. Co.* 56 N. Y. 538.

WINSLOW, J.   The important contentions made by the appellants are that the evidence shows that the plaintiff was guilty of contributory negligence, and that the evidence and verdict show that the defendants were not negligent. These questions may properly be considered together, and their consideration requires a brief review of the evidence.

The hamlet of Spencer, where the accident happened, is an unincorporated village in Marathon county, with a population of from 500 to 600 people, and the railroad operated by the defendants runs through it in a general northerly and southerly direction.   Clark street is the principal street of the village, and runs due east and west, crossing the railroad track about 300 feet north of the defendants' passenger station.   There are four railroad tracks crossing Clark street, about thirty feet distant from each other, and all crossing at a more or less acute angle.   Beginning at the west, these tracks are called the switch track, the passing track, the main track, and the station track.   From 100 to 125 teams cross these tracks daily on Clark street, the principal travel being from 10 o'clock A. M. to 4 o'clock P. M.

The plaintiff was a farmer and teamster, who lived about twelve miles from Spencer, and on the day of the accident he had been engaged to drive a four-mule team attached to bobsleighs loaded with a heavy load of hardwood lumber and timber to the depot at Spencer.   The team and load together were more than forty feet in length.   He arrived at Spencer a little before 1 o'clock P. M., drove into Clark street, and approached the railroad crossing from the west. There were two obstructions interfering with a northward view of the railroad tracks.   These obstructions were Bres-

nahan's saloon and a box car which was standing on the
switch track, both being on the north side of Clark street.
The former is a frame building, twenty feet wide, fronting
due south, standing close to the right of way and about
thirty feet distant from the switch track and the box car.
The box car stood partially within the limits of the street,
its south end being close to the traveled track of Clark
street.  From the box car to the passing track the distance
was less than thirty feet, and, as before stated, from the
passing track to the main track was about thirty feet.  There
is considerable evidence tending to show that there were
piles of staves and lumber standing west of the track and
north of Clark street, which would interfere to some extent
with the sight of a train coming from the north.  The plaint-
iff testifies that he did not know which of the four tracks
was the main track.  A man was driving another team,
with a load of lumber, ahead of the plaintiff, and according
to the plaintiff's testimony he (plaintiff) stopped his team
when his mules were in front of Bresnahan's saloon, to look
and listen, and to give the man ahead a chance to cross.
Plaintiff also testifies that the man ahead hollered back to
him that they were late, or that the train had gone.  After
looking and listening, the plaintiff started his team towards
the tracks at the rate of two or three miles an hour, and
passed the saloon and the box car.  He testifies that he was
standing on the front end of the load; that after passing
the box car he looked up and down the track for trains;
that he heard no signals; and that when his leaders were on
the main track he first saw the train approaching rapidly
from the north.  What the plaintiff did at this time is not
very certain.  He himself cannot tell with any degree of
certainty.  He seems to have struck his mules with the whip
in an endeavor to get the load across the track.  He testi-
fies that he jumped from the load.  It is a fact, however,
that the mules got across the track in safety.  The engine

pilot struck the load just back of the front sled. The lumber was scattered along the west side of the track for some distance, and the plaintiff was picked up thirty feet or more south of the place of collision, and about the same distance west of the main track, seriously injured.

The engineer of the train did not see the plaintiff's team until the engine was about 100 or 150 feet from them, when he reversed the engine. The train was the regular south-bound train, due at Spencer at 1:03 P. M., and seems to have been on time, and was to stop at the station. Its speed between stations was about thirty-five miles an hour. Its speed at the time when the engine was reversed was variously estimated by the witnesses, some of whom placed it as high as thirty-five miles an hour, being the speed which the jury found. There was another street crossing about 250 feet north of Clark street, and there was testimony tending to show, as the jury found, that the engine whistle was blown but once on approaching Clark street. The day was cold, and the plaintiff had some muffling about his head and ears, but he. claims that it did not impair his hearing.

This statement, though incomplete, covers, we think, all the facts necessary to be stated in passing upon the two questions which we are considering.

In support of the contention that the plaintiff's own evidence shows him to have been guilty of contributory negligence, much reliance is placed on the case of *Nelson v. D., S. S. & A. R. Co.* 88 Wis. 392, and it is argued that the cases are substantially alike. We do not so regard the two cases. In the *Nelson Case* it appeared that the plaintiff was approaching a single railroad track, where he knew trains were to be expected at any time. He stopped for a little time in front of a building near the track which cut off his view of the track entirely, and then drove out towards the track, from twelve to fourteen feet, without looking. In that case it was said that the case was not like a case where

one was advancing steadily along a street, and has his view momentarily cut off by a building, he having looked before he passed behind the building. The present case is complicated with numerous circumstances which were not present in the *Nelson Case*, and which must be considered in judging of the plaintiff's conduct. In this case the plaintiff was approaching, with a very long and unwieldy team and load, four separate railroad tracks, with which he was not familiar, on any one of which, so far as he knew, a moving train might be expected as well as upon another. He stopped to look and to listen at the last place where he could obtain a view to the northward before commencing to cross the tracks. It is said that he did not look to the northward at the very moment when he emerged from behind the box car, and that, if he had so looked, he would certainly have seen the approaching train before he arrived at a point eighteen feet from the main track. But it must be remembered that the plaintiff had his four-mule team to direct, and that he had also to watch for possible trains on four tracks in two different directions. He was not an unincumbered foot passenger, but in charge of valuable animals and property. Possibly he did not see the train at the first moment possible (although this is by no means clear), but we do not feel that we can say, under all the circumstances that surrounded him, that he failed to exercise ordinary care.

Nor, on the other hand, can we say that the evidence fails to justify the jury in finding that the negligent handling of the train was the cause of the collision. The jury found that but one whistle was sounded, that the bell was not rung continuously, and that the train was run at an unnecessarily dangerous rate of speed, viz., at the rate of thirty-five miles an hour. They also found that all of these acts and omissions constituted a want of ordinary care on the part of the defendants, and that they were the proximate

cause of the accident. We think there was sufficient evidence to support all of these findings. It is undoubtedly true, as contended by the appellants, that the statute limiting the speed of trains in cities and villages to six miles per hour does not apply to this case, because the village of Spencer was an unincorporated village. R. S. sec. 4972, subd. 5. It does not result from this, however, that a railway train may be driven at any rate of speed that the engineer may choose across the streets of an unincorporated village. There will frequently be crossings whose surroundings will demand that the engine be driven slowly and carefully. It is argued that, there being no statutory limitation on the speed in the present case, there are no facts from which it can be properly found that the speed of the train in question was negligently high. We think the circumstances amply warrant the submission of the question to the jury. Here was a busy hamlet, whose main street crossed the railroad tracks of the defendants on grade. It was a frequently traveled street. The approach to the tracks was obscured by buildings, and at the time of the accident additionally obscured by the freight car which had been left standing partially in the street. These facts all have a legitimate bearing on the question whether the speed of the train at the time was negligently high, and we cannot say that the finding of the jury in this regard is not supported by the facts and circumstances of the case.

Some minor questions are raised by the appellants, but we do not deem it necessary to discuss them. It is sufficient to say that we have found no errors in the record warranting a reversal. The case seems to have been fairly tried, and the findings of the jury are justified by the evidence and sustain the judgment. It is said that the damages are excessive, but we cannot so hold. Upon the whole record, the judgment is right and must be affirmed.

*By the Court.*— Judgment affirmed.