WANZER, Appellant, vs. CHIPPEWA VALLEY ELECTRIC RAIL- 108    319
     ROAD COMPANY, Respondent.                         112   ³230

*November 17 — December 7, 1900.*

*Street railways: Injury to passenger: Negligence and contributory neg-*
*ligence: Degree of care required: Proximate cause: Special verdict:*
*Inconsistency: Modification: Court and jury.*

1. In an action against a street railway company for personal injuries
   alleged to have been caused by negligence in the operation of the
   car in which plaintiff was riding, a finding of the special verdict
   that a prudent person engaged in the business of the defendant,
   who exercised the utmost care and forethought for the safety of
   passengers, would not have foreseen, in the light of attending cir-
   cumstances, that an injury to plaintiff would be the natural and
   probable result of operating the car as it was operated, is *held* to
   be in direct conflict with a finding that the defendant's failure to
   exercise the highest degree of skill and care which a careful and
   vigilant man would observe in like circumstances was the proxi-
   mate cause of plaintiff's injuries; and the verdict is therefore in-
   sufficient to support a judgment in defendant's favor.
2. There having been several passengers in the car, to all of whom the
   company owed the same duty of care and forethought, the ques-
   tion which should have been submitted to the jury was not whether
   an injury *to plaintiff* only, but whether an injury *to any of such*
   *passengers,* should have been foreseen as the natural and probable
   result of operating the car as it was operated.
3. Upon the evidence — which tended to show, among other things,
   that a little after 8 o'clock on a dark, stormy evening in June,
   while the car was running about seven miles per hour, the motor-
   man received a signal to stop; that he immediately sounded the
   gong and shut off the current; that at about the same time he no-
   ticed a load of hay on the track about seventy-five or eighty feet
   ahead of him; that he immediately set his brake; that when about
   twenty feet from the load he discovered he could not stop the car
   with the brake, and immediately reversed the current, but the
   circuit breaker instantly blew out, and the car struck the load;
   and that the plaintiff, being frightened by the flash and explosion,
   followed by a crash and rattle of breaking glass, ran out, jumped
   off the steps while the car was still in motion, and was injured,—
   it is *held* that it was not error for the trial court to refuse to mod-

ify findings in the special verdict to the effect that defendant's failure to exercise the highest degree of skill and care which a careful and vigilant man would exercise was the proximate cause of the injury; that the car could have been stopped within seventy-five feet by the use of all appliances with which it was equipped, and that the motorman, by the exercise of the utmost care in performing his duty, could have avoided the collision after he observed the wagon on the track; and it was also a question for the jury whether, in view of the darkness and the liability of teams to be upon the track, the speed of the car was negligently high.

4. If the collision was caused by the motorman's negligence, and the plaintiff did not attempt to leave the car until after it occurred, she would not be precluded from a recovery by the mere fact that, being nervous and frightened, she unwisely attempted to escape instead of remaining quietly in the car with the other passengers, who were unhurt.

5. For the safety of their passengers, common carriers are required to exercise the highest degree of care reasonably to be expected from human vigilance and foresight, in view of the mode and character of the conveyance adopted and consistent with the practical prosecution of their business. Questions for a special verdict which, in connection with the instructions, fixed the standard of care as "the highest degree of skill and care which a careful and vigilant man would observe, in like circumstances, in the management of such business," "the utmost care and forethought for the safety of passengers," etc., are *held* erroneous.

APPEAL from a judgment of the circuit court for Eau Claire county: JAMES O'NEILL, Circuit Judge. *Reversed.*

For the appellant there was a brief by *W. C. Donovan*, attorney, and *V. W. James*, of counsel, and oral argument by *Mr. Donovan.* They argued, among other things, that it is sufficient to charge the defendant if its acts were of such a character that in the exercise of proper care it might have foreseen that injury to others might probably result therefrom, even though it could not anticipate the precise injury which did happen to plaintiff would happen to her. *Brown v. C., M. & St. P. R. Co.* 54 Wis. 351; *Christianson v. C., St. P., M. & O. R. Co.* 67 Minn. 94, and cases cited; *Gilson v. Delaware & H. C. Co.* 36 Am. St. Rep. 802, and

cases in note; *Andrews v. C., M. & St. P. R. Co.* 96 Wis. 358; *Stevens v. Dudley,* 56 Vt. 158, 166; *Hill v. Winsor,* 118 Mass. 251; *Higgins v. Dewey,* 107 Mass. 494.

For the respondent there was a brief by *Frawley, Bundy & Wilcox,* and oral argument by *R. P. Wilcox.* They contended, *inter alia,* that in order that a negligent act may be held to be the proximate cause of the injuries inflicted, it must have been such an act and so done that the defendant, as a prudent person, in the light of all the attending circumstances, would reasonably have anticipated that an injury to the plaintiff might naturally and probably result. *Atkinson v. Goodrich T. Co.* 60 Wis. 141, 164; *McGowan v. C. & N. W. R. Co.* 91 Wis. 147, 156, 157; *Huber v. La Crosse City R. Co.* 92 Wis. 636; *Sheridan v. Bigelow,* 93 Wis. 426, 428; *Pier v. C., M. & St. P. R. Co.* 94 Wis. 357; *Deisenrieter v. Kraus-Merkel M. Co.* 97 Wis. 279, 285, 286.

CASSODAY, C. J.   This is an action to recover damages for personal injuries sustained by the plaintiff while riding as a passenger for hire on the defendant's electric car, by reason of its running into a load of hay, at ten minutes after 8 o'clock on the evening of June 12, 1899.

Issue being joined and trial had, the jury returned a special verdict to the effect (1) that the defendant did, in the manner in which it operated the car in which the plaintiff was a passenger at the time of receiving her injuries, fail to exercise the highest degree of skill and care which a careful and vigilant man would observe in like circumstances in the management of such business; (2) that such failure to exercise such skill and care was the proximate cause of the plaintiff's injuries; (2½) that a prudent person engaged in the business of the defendant, who exercised the utmost care and forethought for the safety of passengers, would not have foreseen, in the light of the attending circumstances, that an injury *to the plaintiff* would be the natural and probable re-

sult of operating the car as it was operated; (3) that the plaintiff was not guilty of any want of ordinary care which contributed to her injuries; (4) that the car in question could have been stopped, at the time and place where the accident occurred, by the use of all the appliances with which the car was equipped, inside of seventy-five feet; (4½) that McClellan's wagon proceeded northerly on the defendant's track at the time of the collision, about 175 feet; (5) that the motorman, Fox, by the exercise of the utmost care in performing his duty, could have avoided colliding with McClellan's wagon after he observed the same on the track; (6) that the defendant's conductor in charge of the car did not exercise that care which a careful and vigilant man in the same business, under like circumstances, would have exercised to prevent the plaintiff from leaving the car; (7) that they assessed the plaintiff's damages at $1,575. Questions 2½, 4, 4½, and 6 were submitted at the request of the defendant.

Thereupon the plaintiff moved the court, upon the minutes of the judge and such verdict, to order judgment in favor of the plaintiff and against the defendant, or to strike from the verdict the answer to question 2½, or to change the negative answer to that question to an affirmative answer, and then order judgment thereon in favor of the plaintiff and against the defendant, which several motions of the plaintiff the court denied, and the plaintiff then and there excepted. Thereupon the defendant moved the court for judgment on the verdict in favor of the defendant and against the plaintiff, dismissing the complaint with costs, and also to strike out the affirmative answer to question No. 2, as being a conclusion of law and erroneous, and insert in lieu thereof a negative answer, and for judgment thereon in favor of the defendant and against the plaintiff, dismissing the complaint with costs, and also to strike out the answers to questions Nos. 4 and 5, respectively, as not being sus-

tained by the evidence, and for judgment in favor of the defendant upon the verdict so modified, dismissing the complaint, which several motions of the defendant to change and modify the verdict were each and all denied by the court, and the defendant then and there excepted. Thereupon the court ordered that judgment be entered in favor of the defendant, dismissing the complaint, on the verdict so rendered, with costs to be taxed against the plaintiff, to which ruling the plaintiff excepted.

1. The first question presented by the record for consideration is whether the judgment in favor of the defendant is supported by the findings of the jury. As indicated in the statement of facts, all the findings of the jury are in favor of the plaintiff, except the answer to question No. $2\frac{1}{2}$; and that answer is in direct conflict with the answer of the jury, under the charge of the court, to question No. 2, as to the proximate cause of the plaintiff's injuries. Certainly the judgment is not supported by such conflicting findings upon a vital question in the case. *Haas v. C. & N. W. R. Co.* 41 Wis. 44; *Fick v. Mulholland,* 48 Wis. 310; *Selleck v. Griswold,* 49 Wis. 39; *Burns v. North Chicago R. M. Co.* 60 Wis. 541; *Goff v. C. R. & M. R. Co.* 86 Wis. 237; *Darcey v. Farmers' L. Co.* 87 Wis. 245; *S. C.* 91 Wis. 654.

2. Besides, there is another insurmountable objection to holding that the judgment for the defendant is supported by the findings of the jury; and that is that the answer of the jury to question No. $2\frac{1}{2}$, upon which the defendant relies, does not embody the standard of care required of the defendant. There were several persons in the car besides the plaintiff. The defendant owed the same duty of care and forethought for the safety of all of them. If by the exercise of such care and forethought the defendant's employees, or any of them, in charge of the car, would have foreseen, in the light of the attending circumstances, that an injury to any of such passengers would be the natural and probable

result of operating the car as it was operated, and failed to do what they could to prevent such injury, then the defendant would be guilty of actionable negligence, whereas the question submitted and answered limited the defendant's care and forethought to the plaintiff alone.

3. Undoubtedly a trial court may change and modify particular findings of the jury in a special verdict so as to conform to the admitted facts or the undisputed evidence. *Conroy v. C., St. P., M. & O. R. Co.* 96 Wis. 243, 257; *Keller v. Schmidt*, 104 Wis. 602. The question recurs whether, upon the undisputed evidence, the court should have granted the defendant's motion to change and modify the answers of the jury to questions 2, 4, and 5, as indicated in the statement of facts.

The defendant's line of street railway runs from a point in Eau Claire to Chippewa Falls. After leaving the corner of Barstow street and Grand avenue, in Eau Claire, it passes, among other streets, eastward on Madison street to Putnam street, and thence north on Putnam street across Birch street and beyond. About 8 o'clock on the evening in question the plaintiff took passage on the defendant's car at the corner of Barstow street and Grand avenue for Birch street, where she informed the conductor that she desired to get off. The accident happened on Putnam street, and a short distance south of Birch street. Four hundred and twenty-two feet north of Madison street there is a street coming into Putnam street from a westerly direction,— known as "Fay Street,"— which is seventy-three feet in width. From Fay street to Birch street is 427 feet. A short time before the car in question reached Fay street from the south, the witness McClellan drove out of Fay street with a load of hay onto Putnam street, and from thence north on that street, in such a way that the east wheels of his wagon were between the rails of the defendant's track. The jury find that McClellan's wagon proceeded northerly on the de-

fendant's track at the time of the collision for a distance of 175 feet, and that finding is not challenged by either party.

The motorman on the car in question testified to the effect that after he turned the corner of Madison and Putnam streets he rang the gong until he reached Fay street; that when he got in the middle of the block between Fay and Birch streets he got a signal — one tap of the bell — from the conductor to stop at the next corner; that he answered such signal with one tap of the gong; that soon after that he noticed a team of horses on his left, and looked to see if they were clear in the road; that as he turned his head back and threw off his power he noticed a load of hay on the track in front of him, and immediately set his brake, and when he saw that he could not stop the car with the brake he reversed his car, and in doing so the circuit breaker blew out, and he hit the load of hay; that, as near as he could judge, he was about twenty feet from the load of hay when he reversed his circuit; that instantly after he reversed the car the circuit breaker blew out; that he only got two points of the current on the reverse; that when the car struck the load of hay the front window of the vestibule was broken, and the oil headlight in front was broken; that the car might have gone eight or ten feet ahead after striking the load; that he did not notice much of any jar; that he remained standing in his place, and the collision had no effect on him; that, as near as he could judge, the load of hay was about seventy-five or eighty feet ahead of him when he first saw it; that there was a large storm coming up and it was dark at the time; that at the time he first saw the load of hay his car was running about seven miles an hour; that he turned the current off just about the same time that he saw the load of hay, for the purpose of getting ready to make his stop at Birch street; that he had struck his gong three or four times for Birch street, and was hitting it at the time he saw the load of hay; that at the time the car

stopped it was about ten or twelve feet from the south side of Birch street crossing; that the lights were burning in the car at that time, and had been all the time after the car got onto Putnam street; that there were eight incandescent lights inside the car, and an incandescent headlight on both ends of the car, and an oil headlight on the outside of the front end of the car; that he thought he might, by using all the appliances, have stopped the car, at the rate it was going, in a distance of from 100 to 125 feet. The motorman appears to have been a person of considerable experience, and the car was apparently properly equipped.

The plaintiff, who was at the time twenty-eight years of age, testified to the effect that the car was moving along at an ordinary rate of speed, when there was a flash, which seemed like an explosion and as though the car was filled with fire; that following such flash and explosion there was a crash, and the glass began to rattle and break, and that it seemed to her as though the car was going to pieces; that she remained in her seat until after the glass began to break, and then, being terribly frightened, she tried to escape from the car, and ran and jumped or stepped off the rear platform while the car was still moving slowly.

The conductor of the car, who appears to have been a man of considerable experience, was standing on the rear platform when the circuit breaker blew out, and testified to the effect that after the circuit breaker blew out the plaintiff came to the rear door of the car; that he told her to wait until the car stopped; that she was at that time on the rear platform; that she then jumped straight off from the step; that her feet struck first, and then she fell; that he jumped off the car right after her; that the crash or sound of breaking glass occurred just as he left the car; that the plaintiff was then on the ground. He also corroborated the motorman as to the giving of signals, the sounding of the gong, and the darkness at the time.

The testimony is voluminous. Enough has been given to indicate the general nature of the questions presented. It will be observed that as the motorman turned his head back from the passing team he threw off his power, and then noticed the load of hay on the track, seventy-five or eighty feet in front of him, but that he did not reverse his current until he was about twenty feet from the load of hay. We cannot say, as a matter of law, that the court should have granted the defendant's motion to change the answers to the three questions mentioned,— especially the second and fifth. The darkness of the night, caused by the coming storm and the trees along the street, and the liability of teams to be upon the track, made it a proper question for the jury to determine whether, under the circumstances, the speed of the car was negligently high. *Heath v. Stewart*, 90 Wis. 418.

4. It appears that the other persons in the car remained until it stopped, and were uninjured. Manifestly, if the plaintiff had so remained in the car she would not have been injured. But the flash, explosion, and collision were well calculated to shock a nervous person, as the plaintiff appears to have been. Such persons are liable and expected to ride upon street cars, as well as to travel upon the public highways. *Oliver v. La Valle*, 36 Wis. 597; *Stewart v. Ripon*, 38 Wis. 584, 591. We assume that the reversal of the car and the consequent blowing out of the circuit breaker was not of itself actionable negligence. If that is so, then, if the plaintiff actually started out of the car and was jumping or stepping therefrom before the collision and while the car was in motion, as testified to by the conductor, the collision was not the proximate cause of her injuries. But if the collision was caused by reason of the motorman's negligence, and she remained in her seat until after the collision, as detailed in her evidence, then she would not be precluded from a recovery by the mere fact that she unwisely at-

tempted to escape from the car instead of remaining quietly in the car. In other words, she is not precluded from a recovery merely for failing to choose what, after the result was ascertained, might seem to have been the best means of escape. *Bishop v. Belle City St. R. Co.* 92 Wis. 145; *Wynn v. C. P., N. & E. R. R. Co.* 133 N. Y. 575. Besides, the jury found that the plaintiff was free from contributory negligence, and that finding is unchallenged.

5. But we cannot hold, as a matter of law, that the plaintiff's motion to set aside the answer of the jury to question No. $2\frac{1}{2}$, and then order judgment in favor of the plaintiff upon the other findings of the jury, should have been granted. In answer to some of the questions submitted, the jury required the defendant to exercise a higher degree of care than the law imposed. Thus, in answer to the first question the jury found that the defendant failed "to exercise the highest degree of skill and care which a careful and vigilant man would observe, in like circumstances, in the management of such business." The charge of the court authorized the jury to find that the failure to exercise such a degree of care in respect *to the plaintiff* was the proximate cause of her injuries. So in answer to question No. $2\frac{1}{2}$ the jury found that the defendant did not exercise "the utmost care and forethought for the safety of passengers," etc. The fifth question submitted is subject to a similar criticism. So the charge requiring the defendant "to operate its cars with the highest degree of skill and care commensurate with or proportionate to the *possibility* of injury to its passengers" is subject to the same criticism. So by the charge the defendant was held "bound to exert the utmost care and prudence in carrying its passengers." Undoubtedly there are adjudications which give support to such expressions in regard to such carriers, but in our judgment they are misleading if not erroneous. A recent text writer has stated, as the clear result of the best adjudications on the subject, the rule thus: "For the safety of their passengers, common carriers are

required to exercise the highest degree of care reasonably to be expected from human vigilance and foresight, in view of the mode and character of the conveyance adopted and consistent with the practical prosecution of their business." 1 Fetter, Carriers of Passengers, § 8, and cases there cited. Among the adjudications which fairly support such proposition are the following: *Libby v. M. C. R. Co.* 85 Me. 34, 44; *Murray v. L. V. R. Co.* 66 Conn. 512; *Chicago & A. R. Co. v. Byrum,* 153 Ill. 131, 134; *Keller v. H., M. & F. P. R. Co.* 149 Pa. St. 65; *Fredericks v. N. C. R. Co.* 157 Pa. St. 103; *Philadelphia, W. & B. R. Co. v. Anderson,* 72 Md. 519, 526, 527; *Bowen v. N. Y. C. R. Co.* 18 N. Y. 408. The rule stated seems to be reasonable and just, both to the passenger and the carrier.

The wording of some of the questions submitted, and the charge to the jury, may be the subject of criticism, but that will probably be obviated upon a new trial.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.