LARSON and wife, Respondents, vs. GREEN BAY & WESTERN RAILROAD COMPANY, Appellant.

*January 10—February 6, 1923.*

*Carriers: Passenger trains: Degree of care required: Announcing station before train has arrived: Passenger alighting in dangerous place: Negligence: Death: Excessive damages.*

1. On evidence disclosing without dispute that the deceased, on a dark, rainy evening, was a passenger on defendant's train which had come to a stop with the last coach on a bridge over the Trempealeau river, near Blair station; that the brakeman in charge of the train called the name of the station although the train had not arrived there but had stopped at a water tank some distance away; and that deceased was found dead the same evening in the Trempealeau river, the court was warranted in answering a question in a special verdict to the effect that deceased was drowned as a result of his stepping from the train after it had stopped at the water tank.

2. A railroad company is required to exercise a high degree of care to protect its passengers against known dangers, and it was negligence on the part of the company to mislead a passenger into a dangerous situation such as existed in this case.

3. A verdict for $1,500 in favor of aged parents for the death of an adult son is *held* not excessive.

APPEAL from a judgment of the circuit court for La Crosse county: S. E. SMALLEY, Judge. *Affirmed.*

Personal injury action. The plaintiffs are the parents of Sigvald Larson, deceased, and bring action for damages by reason of the negligence of the defendant causing the death

of their son. The defendant is a railroad corporation and operates a railroad between the villages of Independence and Blair in Trempealeau county.

The complaint alleges that on the 4th day of November, 1920, Sigvald Larson purchased a ticket over defendant's road to Blair, and while riding on defendant's train, as it was approaching the station at Blair, the brakeman in charge of said train called the name of the station "Blair," and the train shortly thereafter came to a complete stop; it was about 6 o'clock in the evening, raining, and very dark; the train, when it came to a stop, had not reached the station at Blair, but the engine had stopped at the water tank, which water tank was located some distance west of the station, and the rear end of the coach upon which said Sigvald Larson was riding came to a complete stop on the bridge, which bridge crosses the Trempealeau river; the place where the train stopped was an unusual and a dangerous place for passengers to alight; the defendant negligently failed to warn the passengers upon its train and failed to warn Sigvald Larson that the train had stopped at a place other than the station "Blair;" the place was a dangerous place to alight and get off the train, and the defendant negligently failed to place any one in charge of said 'train to warn the passengers and Sigvald Larson of the danger from alighting at said place, nor were any guards, signs, or others means employed by defendant to warn Sigvald Larson or any of the passengers then on said train from alighting therefrom; that by reason of the said acts of the defendant, Sigvald Larson proceeded to alight from the train, and because he thought he was at the station "Blair," when he alighted from the train he stepped off the platform thereof, and, without any fault on his part, fell from said bridge and into the Trempealeau river and was instantly killed.

The answer admits that "on the 4th day of November, 1920, the said Sigvald Larson was a passenger on defendant's train and that as said train approached the village of

'Blair, Wisconsin, at about 6 o'clock p. m., said train came to a stop at the water tank, which said water tank is located some distance west of said station and on the right of way of defendant's railroad company, and that part of said train when stopped at said water tank was on a bridge on defendant's right of way, which said bridge crosses the Trempealeau river; that the said Sigvald Larson, on the 4th day of November, 1920, fell into the Trempealeau river and was killed."

The case was tried before a jury, which rendered a special verdict, in which it was found that Sigvald Larson was drowned on November 4, 1920, as a result of his stepping off the defendant's train just after said train had stopped at a water tank near the station of Blair, Wisconsin. This finding was by the court. The jury further found that the defendant failed to exercise the highest degree of care that men of reasonable vigilance and foresight ordinarily exercise in the practical conduct of such a business under the same or similar circumstances; that a trainman on defendant's train called the name of the station "Blair" just before the train stopped at said water tank; that the conduct on the part of said trainman constituted a want of the highest degree of care that men of reasonable vigilance and foresight ordinarily exercise in the practical conduct of such a business under the same or similar circumstances; that the death of Sigvald Larson was the natural and probable result of such course of conduct on the part of those in charge of said train; that those in charge of said train, acting as persons of ordinary intelligence and prudence, ought reasonably to have foreseen that an injury to a passenger on said train might probably result from such course of conduct on their part. The damages were assessed in the sum of $1,500.

Frank Ellison was the brakeman in charge of the coach in which the deceased was riding, and he testified:

"My duties were helping off and on passengers and call-

ing stations." He saw the deceased on the coach and "he spoke to me and I answered him back 'Hello.' . . . I didn't notice whether he got up or not. I did not notice where Larson went to when he got out of the seat. I went through to the farther end of the car and announced there and they got up and out some way without my noticing. I did not see Larson at all after that. I do not know what happened to him only what I heard that night after I got home. At this place where the train stopped at the water station there is a kind of high bank. A bridge crossed the Trempealeau river. It was a real dark night, misting a little if I am not mistaken. That would be a dangerous place for passengers to alight if anybody wanted to get off there. I did not announce to any of the passengers that it was a dangerous place to get off as we never let them off there. . . . Where the railroad track crosses Trempealeau river at that place a man could not safely get off the train. .. . . The bridge was just the length of the ties, that was all. There was no railing or anything on the bridge at that time. If any one should step off the train on the bridge they would go right off the side down into the river. There was no protection. . . . We stopped at the water station about three minutes."

Anna Knutson testified:

"I was going east to Blair. That particular train stopped at the water tank that day. They called for Blair just before they came up to the tank and then I got up as I thought we were up to the station. They called for Blair before they stopped at the water tank. I did not hear them make an announcement that they were going to stop at the water tank. I am positive they called off Blair and I got up from my seat, took my grip and was going out the open door. Then the conductor came along and said that we were not up to the station yet. I was sitting a little to the front from the center of the car."

On the question of damages it appeared that the father of the deceased had a farm worth approximately $4,000, and a house and lot in the village of Blair worth about the same sum. The farm was rented for $250 a year. Out of the rent he had to pay taxes on his farm and on his home in

Blair. After paying taxes and insurance he had nothing left. He could do a little work, but his health was not good. He was sixty-three years of age, and had no other source of income except such as he received from the deceased son. The mother was sixty-one years of age and had been sick with rheumatism and heart trouble a good many years. The deceased had contributed, during the year and a half immediately prior to his death, about $350 to the plaintiffs, part of which was for board and lodging. Some of the time he had been absent in Dakota, and during that time he had sent to the plaintiffs some money, once $25 and once $35. Prior to the year and a half before the accident the deceased had been in the army. The plaintiffs had a daughter, thirty-six years old and unmarried, who was supporting herself by sewing. She resided with her parents and helped them along a good deal in exchange for board. They had three other children—a son twenty-two, who was running the farm, a daughter thirty-three, who was married, and another daughter twenty-seven, living in St. Paul.

Judgment was had for the plaintiffs on the special verdict. The defendant and appellant assigns as errors that the court erred in denying the motions for a directed verdict, in refusing to submit the verdict requested by the defendant, and in denying defendant's motions for a new trial.

For the appellant there was a brief by *Cowie & Hale* of La Crosse, and oral argument by *Quincy H. Hale*.

For the respondents there was a brief by *Twesme & Weber* of La Crosse, and oral argument by *Clarence Weber*.

CROWNHART, J. It is contended that the court erred in answering the first question in the verdict to the effect that the deceased came to his death as the result of stepping off the train at the water tank. On this question there is no dispute. The deceased was found dead the same evening in the Trempealeau river. He was last seen on the car before it reached the water tank. The brakeman saw him and

spoke to him on the car.   Before the train reached the water
tank the brakeman called out the station "Blair," and when
the train stopped at the water tank Mrs. Knutson, one of
the passengers, believed that she was at the station and at-
tempted to get off the car, when the conductor stopped her.
The inference is plain that the deceased did get off the
car and fell into the river and was drowned.   The brakeman
testified, "that fellow got out of our reach there some way
after we left the water tank," but he also testified that he
did not see Larson at all after he went through the train
and called the station "Blair."   It is clear that the brake-
man did not mean that Larson got off the train after it left
the water tank, but rather that he did not see him after the
train left the water tank.   The court was warranted in
answering the question as he did.   *Murphy v. Interlake P.
& P. Co.* 162 Wis. 139, 155 N. W. 925.

This case seems to be ruled by *Wolf v. C. & N. W. R.
Co.* 131 Wis. 335, 111 N. W. 514.   Undoubtedly the
deceased was led to believe that the train was at the station
"Blair" when in fact it was at the water tank, by reason
of the brakeman calling the station before the train stopped
at the tank.   Undoubtedly the deceased attempted to alight
from the train, thinking he was at the station, and the night
being very dark he stepped off the bridge and fell into the
river.   Certainly it was negligence on the part of the com-
pany to mislead a passenger into a dangerous situation such
as there existed.   A railroad company is required to exercise
a high degree of care to protect its passengers against
known dangers.   *Wanzer v. Chippewa Valley E. R. Co.*
108 Wis. 319, 84 N. W. 423.

The defendant claims that the verdict is excessive, but
we are satisfied that the verdict was well within the province
of the jury and cannot be disturbed on that ground.   *Bright
v. Barnett & Record Co.* 88 Wis. 299, 60 N. W. 418.   We
discover no prejudicial error in the trial of the case.

*By the Court.*—The judgment is affirmed.