DIBBERT, Respondent, vs. METROPOLITAN INVESTMENT
COMPANY, Appellant.

*April 10—October 6, 1914.*

*Negligence: Injury by fall of elevator: Duty and liability of owner:*
*Carriers: Latent defects in appliances: Duty as to testing: Lia-*
*bility for negligence of manufacturers: Presumptions: Burden*
*of proof: Long use of elevator: Change of ownership: Milwau-*
*kee circuit court: Affidavit of prejudice: Sending case to an-*
*other judge: Appeal: Affirmance: Motion for new trial below.*

1. The liability of the owner of an elevator in an office building to
   those rightfully using it is that of common carrier to passen-
   gers, and his duty in respect to providing for their safety is
   to exercise the highest degree of care reasonably to be expected
   from human vigilance and foresight, in view of the character
   of the conveyance used, and consistent with the practical op-
   eration of the business.
2. If there are certain known and satisfactory tests by which la-
   tent defects may be discovered in those appliances upon the
   soundness and strength of which the safety of the passenger
   depends, it is the duty of the manufacturer of those appliances
   to make such tests; and the carrier is liable for the negli-
   gence of the manufacturer in that respect.
3. Proof that the fall of an elevator, whereby a passenger was in-
   jured, was due to a latent defect in a bolt raised a presumption
   of negligence on the part of the owner of the elevator and—it
   appearing that there was a known method of testing such bolts
   for latent defects which, had it been applied, would in all
   probability have discovered the defect—cast upon such owner
   the burden of showing that an actual test of the tensile strength
   of the bolt had been made.
4. If the fact that the elevator had been in service for more than
   twenty years when the bolt broke would tend to acquit the
   manufacturer of negligence, then the exercise of due care
   would impose on the owner the duty of taking the machinery
   apart and examining and testing the bolt to ascertain whether
   or not it had become materially weakened from constant use.
5. If a change in the ownership of the building and elevator dur-
   ing the period in which the elevator was used could in any case
   affect the question of liability, it did not do so where the
   change was practically nominal, as where the former owner

transferred the property to a corporation in which he and his wife were the principal stockholders.

6. Although an affidavit of prejudice of the judge of one branch of the circuit court for Milwaukee county, before whom the case was pending, was not filed within the statutory time, it was not improper or prejudicial for such judge to send the case for trial to the judge of another branch of said court.

7. The mandate herein affirming the judgment of the circuit court is modified so as to permit that court to determine a motion duly made therein for a new trial on the ground of newly discovered evidence.

APPEAL from a judgment of the circuit court for Milwaukee county: OSCAR M. FRITZ, Circuit Judge. *Affirmed.*

On February 28, 1912, plaintiff, while riding as a passenger in an elevator in the office building of the defendant in the city of Milwaukee, was injured by the dropping of the elevator from the fourth floor to the basement. This action was brought to recover damages for injuries sustained. It was a cable-hoisted hydraulic passenger elevator running on guides. The elevator cage was attached to the cables by means of a draw-bolt or king-bolt. The upper end of the draw-bolt contained five eyes or holes. Through these holes three hoisting cables were fastened on one side and two counterweight cables on the other side. The lower end of the bolt passed through a saddle strap, and a nut was screwed onto the thread at the lower end of the bolt and under the saddle strap. The nut was held in place by a cotter-pin which ran through the bolt below the nut, the saddle strap resting on the nut. This strap went around the beam on the top of the elevator cage and in this manner the cage was suspended. The draw-bolt broke off flush with the upper side of the nut, through the threaded portion of the bolt, and this is what caused the elevator to drop.

The complaint charged the defendant with negligence for failure to maintain a reasonably safe and suitable elevator for the carriage of passengers; alleged that for a long time prior to the accident the elevator was in an unsafe and dan-

gerous condition and defective;.that it was not equipped with
a proper safety device as required by the city ordinance; that
the draw-bolt in question was placed in the elevator at the
time the elevator was installed, nearly twenty years previous
to the accident, and that long usage and the vibration from
the elevator when in operation had caused the bolt to become
worn and defective and the steel to become crystallized; fur-
ther, that the bolt was defective at the time it was put in
place, having a flaw known as a blow-hole or sand-hole at the
place where it broke.    The answer of the defendant denied
all the material allegations of the complaint.    The case was
regularly called for trial in branch number 3 of the circuit
court for Milwaukee county, and by order of the court it was
sent for trial to branch number 2 of said court, where, over
defendant's objection, it was tried.    The jury returned the
following special verdict:

"(1) Was the defendant guilty of negligence in failing to
keep the south elevator provided, up to the time plaintiff was
injured, with a draw-bolt which was reasonably safe and suf-
ficient for the carriage of passengers?    A. Yes.

"(2) If you answer the first question 'Yes,' then answer
this question: Was such negligence the proximate cause of
plaintiff's injury?    A. Yes.

"(3) At the time plaintiff was injured, was the safety de-
vice on the south elevator in a reasonably safe condition for
the purpose for which it was intended?    A. No.

"(4) If you answer the third question 'No,' then answer
this question: Was the defendant guilty of negligence in fail-
ing to keep such safety device in a reasonably safe condition
for the purpose for which it was intended?    A. No.

"(5) If you answer the fourth question 'Yes,' then was
such negligence the proximate cause of plaintiff's injury?
A. ——.

"(6) At the time plaintiff was injured, was the guide post
on the north side of the south elevator reasonably safe and
sufficient for the purposes for which it was intended?    A. No.

"(7) If you answer the sixth question 'No,' then answer
this question: Was the defendant guilty of negligence in

failing to have the guide post at the time of the accident in a reasonably safe and sufficient condition for the purposes for which it was intended?    A. No.

"(8) If you answer the seventh question 'Yes,' then was such negligence the proximate cause of plaintiff's injury? A. ——.

"(9) If the court should be of the opinion that the plaintiff is entitled to recover, at what sum do you assess the plaintiff's damages?    A. Three thousand dollars."

From a judgment entered in accordance with such verdict defendant appeals.

For the appellant there was a brief by *Doe & Ballhorn,* and oral argument by *J. B. Doe.*

*Waldemar C. Wehe,* attorney, and *Christian Doerfler,* of counsel, for the respondent.

The following opinion was filed May 1, 1914:

BARNES, J.    The appellant seeks to reverse the judgment because there was no evidence to support a finding that it was negligent, and because there was a mistrial on account of other errors committed.

In deciding the motions made after verdict the trial judge said:

"Without contradiction, it appears that the defendant and its predecessor acted in the utmost good faith and exercised extraordinary prudence in selecting the elevator which was installed, in arranging for frequent inspections thereof, in relying upon the recommendations and advice of the inspectors, and in promptly complying with their recommendations."

We concur in this statement.    We also think it was a matter of conjecture under the entire evidence whether the defect in the bolt was such that it could have been discovered by the so-called oil, whiting, or hammer tests when the elevator was installed.    We shall assume that none of these tests would have discovered the flaw in the metal.

This bolt was one of the vital parts of the elevator, just as vital as the cables or the beam which supported it.    If any

one of these things gave way, the elevator would fall and injury would be likely to follow, unless, perchance, the safety device stopped the descent before the momentum became excessive.

The owner of an elevator in an office building is to all intents and purposes a common carrier, and his liability to those rightfully using the elevator is that of common carrier to passengers, and of such a common carrier as a railroad or steamship line. *Ferguson v. Truax,* 132 Wis. 478, 490, 110 N. W. 395, 111 N. W. 657, 112 N. W. 513; *S. C.* 136 Wis. 637, 643, 118 N. W. 251; *Wanzer v. Chippewa Valley E. R. Co.* 108 Wis. 319, 84 N. W. 423; *Oberndorfer v. Pabst,* 100 Wis. 505, 513, 76 N. W. 338; *Treadwell v. Whittier,* 80 Cal. 574, 591, 592, 600, 22 Pac. 266; *Fox v. Philadelphia,* 208 Pa. St. 127, 134, 57 Atl. 356.

The duty imposed on common carriers to provide for the safety of passengers is to exercise the highest degree of care reasonably to be expected from human vigilance and foresight in view of the character of the conveyance adopted and consistent with the practical operation of the business. This rule has been applied to both railroad companies and elevator owners. *Oberndorfer v. Pabst, supra; Wanzer v. Chippewa Valley E. R. Co., supra; Ferguson v. Truax, supra; S. C.* 136 Wis. 637, 118 N. W. 251; *Bremer v. Pleiss,* 121 Wis. 61, 98 N. W. 945; *Ingalls v. Bills,* 9 Met. 1.

Some courts state the rule to be that the slightest neglect against which human prudence and foresight may guard and by which hurt is occasioned makes the carrier liable. *Meier v. Pa. R. Co.* 64 Pa. St. 225; *Fox v. Philadelphia,* 208 Pa. St. 127, 134, 57 Atl. 356; *Pennsylvania Co. v. Roy,* 102 U. S. 451, 456; *Morgan v. C. & O. R. Co.* 127 Ky. 433, 105 S. W. 961, 15 L. R. A. n. s. 790, 792; *Taylor v. G. T. R. Co.* 48 N. H. 304, 313.

The carrier must use every precaution for the safety of its passengers that human skill and foresight could suggest, and

if there are certain known and satisfactory tests by which latent defects may be discerned in those appliances upon the soundness and strength of which the safety of the passenger depends, it is the duty of the manufacturer to make such tests. *Hegeman v. Western R. R. Corp.* 16 Barb. 353; *S. C.* 13 N. Y. 2, 26; *Caldwell v. New Jersey S. Co.* 47 N. Y. 282, 287; *Miller v. Ocean S. Co.* 118 N. Y. 199, 207–209, 23 N. E. 462; *Palmer v. Delaware & H. C. Co.* 120 N. Y. 170, 174, 175, 24 N. E. 302; *Carlson v. Phœnix B. Co.* 132 N. Y. 273, 277, 30 N. E. 750; *Treadwell v. Whittier,* 80 Cal. 574, 594, 22 Pac. 266; *Texas & P. R. Co. v. Hamilton,* 66 Tex. 92, 95, 17 S. W. 406; *Ill. Cent. R. Co. v. Phillips,* 49 Ill. 234, 237; *Morgan v. C. & O. R. Co., supra; Sharp v. Grey,* 9 Bing. 457; *Burns v. C. & B. R. Co.* 13 Irish C. L. Rep. N. s. 543. Mr. Hutchinson, after reviewing the authorities English and American on this point, states the rule as follows:

"The established law in both countries may, therefore, be now stated to be that, while a carrier of passengers is bound to use the utmost care and skill in everything that concerns the safety of the passenger, he will not be responsible for injuries arising from latent defects in his vehicles or machinery, which no human care or skill could have either detected or prevented; or in other words, that, while it is his duty to apply every known and practicable test for the discovery of defects and imperfections in the vehicles and machinery which he employs for the transportation of passengers, he does not warrant that they are free from such defects and imperfections, and if it appear that such defects actually existed, but were undiscoverable by such tests, he will not be held liable to the passenger for an injury which may result from them." 2 Hutchinson, Carriers (3d ed.) sec. 905, p. 1013.

The plaintiff proved that he was injured by a fall of the elevator due to a defective bolt. There is no claim that he was guilty of any want of ordinary care. This proof raised a presumption of negligence on the part of the defendant,

and cast upon it the burden of showing that it took all the precautions to safeguard those whom it carried which the law required it to take. *Meier v. Pa. R. Co.* 64 Pa. St. 225, 230; *Miller v. Ocean S. Co.* 118 N. Y. 199, 206, 23 N. E. 462; *Breen v. N. Y. C. & H. R. R. Co.* 109 N. Y. 297, 300, 16 N. E. 60; *Treadwell v. Whittier,* 80 Cal. 574, 582, 22 Pac. 266; *Toledo, W. & W. R. Co. v. Beggs,* 85 Ill. 80, 83, 84; *Caldwell v. New Jersey S. Co.* 56 Barb. 425, 427; *Chicago U. T. Co. v. Newmiller,* 215 Ill. 383, 387, 74 N. E. 410; *Griffen v. Manice,* 166 N. Y. 188, 59 N. E. 925.

It appears from the evidence of a number of witnesses what the tensile strength of this bolt would have been had it been sound and free from the sand flaw found therein and from other defects; so it appears that the tensile strength of the bolt might have been tested. It is quite as important for the safety of this elevator that the tensile strength of this bolt be tested as it is for the safety of a railroad train that the strength of a car or locomotive axle be tested, or that the resisting power of a locomotive boiler be tested. A break in any of these appliances is liable to result in the killing or maiming of human beings. It appearing that there was a known method of testing this bolt for a latent defect, which had it been applied might and in all probability would have discovered such defect, it was negligence on the part of the manufacturer not to test the tensile strength of the bolt, considering the use to which it was to be put. The evidence shows, without dispute, that if this bolt had been sound and free from defects it would have had sufficient strength to sustain a weight of from 50,000 to 60,000 pounds after it was threaded and from 70,000 to 80,000 pounds before. The weight of the car and passengers at the time the bolt broke was about 3,600 pounds. The carrying capacity of the car at and before the injury was limited by the city to about 1,000 pounds in excess of the load carried when the bolt broke. The factor of safety was very large if the bolt was

sound.    It should have been capable of sustaining from
twelve to fifteen times the weight that was being actually car-
ried when it broke.    It seems almost certain that a proper
test of the tensile strength of the bolt would have disclosed
its weakness.

Barring for the present one consideration which will be
next discussed, the burden was on the defendant under the
authorities above cited to show that an actual test of the ten-
sile strength of the bolt had been made, in order to relieve it-
self from the presumption of negligence which followed from
the facts shown by plaintiff's evidence.    This it did not do.

The courts which exempt the carrier from liability in the
case of appliances purchased from a reliable manufacturer,
on account of latent defects not discoverable by ordinary in-
spection, where the manufacturer was negligent in not mak-
ing known tests to discover latent defects, do so on these
grounds: They say truly enough that the carrier is not an in-
surer; that the law does not contemplate that carriers will
make their own appliances; that the manufacturers are not
the agents of the carriers; that the carriers have the right to
assume that a dealer of good repute has used such care as was
incumbent on him to use in the construction of the appliance;
that all that can be expected of a carrier is to purchase such an
appliance as it has reason to believe is safe, giving it such an
inspection as is usual and practicable, and that to adopt any
other rule would make the carrier an insurer.    The following
cases follow the foregoing rule: *Grand Rapids & I. R. Co. v.
Huntley,* 38 Mich. 537, 547; *Frelsen v. Southern Pac. Co.*
42 La. Ann. 673, 7 South. 800; *Richardson v. G. E. R. Co.*
L. R. 1 C. P. Div. 342.    There are some expressions to the
same effect in *Ill. Cent. R. Co. v. Phillips,* 49 Ill. 234, but
the question under discussion was not really involved in the
case.    There are also a number of other cases cited as holding
the same doctrine, in the note to *Morgan v. C. & O. R. Co.*
(127 Ky. 443, 105 S. W. 961) 15 L. R. A. N. s. 790.    The

cases have been examined and are not considered in point. In practically all of them it is stated that adequate tests were made to discover latent defects. The only case we have found in this country in which the question is really discussed is that cited from the Michigan court, and that is based on the decision in *Richardson v. G. E. R. Co.* L. R. 1 C. P. Div. 342. The argument of the Michigan court, that a different rule from that adopted would make the carrier an insurer, does not appear to be sound. Liability can always be defeated by showing that an adequate test was in fact made. If the carrier were an insurer this would not be so.

Turning to those cases which hold the carrier liable for the negligence of the manufacturer, we find that they proceed upon the following line of reasoning: The passenger has the right to insist that the carrier shall furnish appliances that will secure his safety, if they can be furnished by the exercise of the utmost care, skill, and precaution. The contract of carriage is between carrier and passenger, and the latter, having no control over or contract relations with the manufacturer, must look to the carrier to see that he is properly protected. The carrier itself may construct the appliance which it uses or it may employ some one else to do so. In either case it engages that all that well conducted skill can do will be done to make the appliance safe. A good reputation on the part of a manufacturer is not a substitute for a good vehicle. What is demanded and what is undertaken by the carrier is not merely that the manufacturer has the requisite capacity, but that it was skilfully exercised in the particular instance. In the ordinary course of things the passenger does not know whether the carrier has himself manufactured the means of carriage or contracted with some one else for its manufacture. If the latter, the passenger does not usually know who the manufacturer is, and in no case has he any share in his selection. The liability of the manufacturer must depend on the terms of the contract between him and

the carrier, of which the passenger has no knowledge and over which he can have no control, while the carrier may make such stipulations and take such sureties as he deems proper for his protection. For injury resulting to the carrier himself for want of care on the part of the manufacturer, the former has or may provide for a remedy, while the passenger has none against the manufacturer for its breach of contract with the carrier. It is not to be presumed that when the passenger makes his contract of carriage he waives damages caused by a defective appliance which the manufacturer in the exercise of due care could have ascertained was defective. The only way that a remedy can be given in such a case is to hold the carrier responsible to the passenger and permit it to seek indemnity from the party whom it has selected to build the appliance and whose breach of contract has caused the mischief. The carrier is in no better position where it employs another to do its manufacturing for it than it would be if it were its own manufacturer, and where it sees fit to employ another to do its manufacturing for it, the rule of *respondeat superior* applies. The following cases hold the carrier liable for the negligence of the manufacturer: *Hegeman v. Western R. R. Corp.* 16 Barb. 353, 356; *S. C.* 13 N. Y. 2, 26; *Caldwell v. New Jersey S. Co.* 47 N. Y. 282, 287 *et seq.; S. C.* 56 Barb. 425; *Carlson v. Phœnix B. Co.* 132 N. Y. 273, 277, 30 N. E. 750; *Pennsylvania Co. v. Roy,* 102 U. S. 451; *Treadwell v. Whittier,* 80 Cal. 574, 596 *et seq.,* 22 Pac. 266; *Morgan v. C. & O. R. Co.* 127 Ky. 443, 105 S. W. 961, 15 L. R. A. N. s. 790; *Francis v. Cockrell,* L. R. 5 Q. B. 184; *Burns v. C. & B. R. Co.* 13 Irish C. L. Rep. N. s. 543; *Sharp v. Grey,* 9 Bing. 457; 2 Hutchinson, Carriers (3d ed.) sec. 909.

Considering the degree of care which a common carrier is required to use, we think the better reasoning, as well as the weight of authority, is to the effect that the carrier is liable for the negligence of the manufacturer, and we so hold. The

New York decisions have been generously referred to herein, and we are not unmindful that it has been held in that state that an elevator owner is not a common carrier and hence its liability is not measured by that of such a carrier. *Griffen v. Manice,* 166 N. Y. 188, 197, 59 N. E. 925. That question is set at rest in this case, however, by the decisions of this court in the *Pabst Case* (100 Wis. 505, 76 N. W. 338) and in the two appeals in the *Truax Case* (132 Wis. 478, 110 N. W. 395, 111 N. W. 657, 112 N. W. 513; 136 Wis. 637, 118 N. W. 251) which have been heretofore referred to.

The elevator had been in service for more than twenty years when the bolt broke, but we do not see how this long use could affect the situation. The fact remains that there was a large flaw in the bolt which greatly weakened its strength; that in all probability a proper test of the strength of the bolt would have disclosed the flaw; that such test was not made; and that plaintiff was injured because it was not made. If long use would tend to acquit the manufacturer of negligence, then the exercise of due care would impose on the owner the duty of taking the machinery apart and examining and testing the bolt to ascertain whether or not it had become materially weakened from constant use, and this was not done.

The case was pending for trial before Judge WILLIAMS and an affidavit of prejudice was filed against him. He held that the affidavit had not been filed within the time the statute required, but declined to try the case and sent it for trial to Judge FRITZ, who presided over another branch of the circuit court for Milwaukee county. It is said that Judge WILLIAMS erred in sending the case to another judge for trial and that Judge FRITZ erred in proceeding with the trial over defendant's objection, and further that the error was jurisdictional. There is but one circuit court for Milwaukee county, consisting of six branches presided over by different judges. The jurisdiction of these judges is co-ordinate, and litigants have

no vested right to try their cases before one judge in preference to another, unless perchance the judge before whom a cause is pending is disqualified on some statutory ground. Surely Judge FRITZ had the same jurisdiction to try the case that Judge WILLIAMS did. The latter, in common with most judges, felt some delicacy about trying a case after the filing of an affidavit of prejudice, even if it was not filed within the statutory time, and in effect called in another judge of the same court to try the case, because this is what the proceeding amounted to. We do not see where there was anything improper or prejudicial in the conduct of Judge WILLIAMS.

The building in which the elevator was located was originally built and owned by Mr. Cotzhausen. Later it was conveyed to the defendant corporation. Mr. Cotzhausen was called in as an adverse witness and under objection testified that he and his wife were the principal stockholders in the corporation. It is argued that this was prejudicial error. If the change in ownership could in any case affect the question of liability, it did not do so here where the change was practically nominal. *Haynes v. Kenosha E. R. Co.* 139 Wis. 227, 119 N. W. 568, 121 N. W. 124; *Wolf Co. v. Kutch,* 147 Wis. 209, 132 N. W. 981.

The other detailed errors assigned become immaterial under the view of the case taken by the court.

*By the Court.*—Judgment affirmed.


The following opinion was filed October 6, 1914:


PER CURIAM. The verdict in this case was rendered June 25, 1913. Before the expiration of one year the defendant made a motion for a new trial in the circuit court on the ground of newly discovered evidence. The mandate of this court affirms the judgment of the circuit court. The defendant conceives that such mandate would preclude the trial court from passing on the motion for a new trial and asks

this court to modify its mandate so as to order a new trial, or, in the alternative, to so modify it that the circuit court may do so if satisfied that the motion should be granted.    The merits of the motion should be passed upon by the lower court, and the mandate is modified so as to affirm the judgment without prejudice to the right of the defendant to have its motion for a new trial determined by the circuit court. Otherwise motion denied without costs.

It is so ordered.