Dibbert, Respondent, vs. Metropolitan Investment Company, Appellant.

*March 4—March 23, 1915.*

*Negligence: Injury by fall of elevator: Defective bolt: Test of tensile strength: Law of the case: New trial: Newly discovered evidence.*

It being the law of this case, under the decision on a former appeal, that a test should have been made of the tensile strength of a bolt which broke by reason of a latent defect, causing the fall of an elevator and injury to plaintiff, and that the burden was upon defendant to show that such test had been made, there was no abuse of discretion in denying defendant's motion for a new trial on the ground of newly discovered evidence, it not being claimed that such evidence would show that there had been an actual test of the bolt, but only that a test of the batch of metal from which it was cast had probably been made and that it was not customary to test individual bolts, and especially since such evidence was merely cumulative on an issue litigated on the former trial.

Appeal from an order of the circuit court for Milwaukee county: Oscar M. Fritz, Circuit Judge. *Affirmed.*

Upon the former appeal, 158 Wis. 69, 147 N. W. 3, the mandate was amended so as to permit in express terms the trial court to pass upon a motion for a new trial on the ground of newly discovered evidence notwithstanding the affirmance of its judgment upon the merits. This is an appeal by the defendant from an order refusing to grant such new trial.

For the appellant there was a brief by *Doe, Ballhorn & Wilkie,* and oral argument by *J. B. Doe* and *H. M. Wilkie.*

For the respondent there was a brief by *W. C. Wehe* and *Christian Doerfler,* and oral argument by *Mr. Wehe.*

Vinje, J. A statement of the facts on the merits of the cause will be found in 158 Wis. 69, 147 N. W. 3. From such statement and opinion it appears that judgment went against defendant largely upon the ground that no test for tensile

strength was shown to have been made of the king-bolt that broke and caused the elevator to fall. Defendant upon the former appeal claimed and still claims that it is impracticable to make test of tensile strength of bolts that are to be used because such test would wholly or in part destroy their strength and render them unsafe for use. It is evident that a test beyond the breaking point would wholly destroy the bolt. It is also a well known fact that a test of tensile strength of cast steel beyond the limit of elasticity weakens the material tested. But no prudent engineer would for a moment permit a steel casting continuously for years to carry a load at all closely approximating the limit of elasticity. The factor of safety should be so large that the maximum load falls considerably below such limit. In ordinary cast steel the limit of elasticity is about one half the ultimate tensile strength. Applying these facts to the evidence in the case we find that the ultimate tensile strength of the bolt in question after it was threaded was from 50,000 to 60,000 pounds. Assuming it was 50,000 pounds its limit of elasticity was about 25,000 pounds. Approximately up to this limit it was safe to test the bolt for tensile strength and still use it. The load of the elevator and passengers at the time the bolt broke was 3,600 pounds. The maximum load permitted for the elevator was 4,600 pounds. A safe test up to 20,000 pounds could have been made. This would have insured a factor of safety of over 15,000 pounds. No test was shown to have been made. It is the law of the case that a test should have been made. The affidavits for a new trial do not claim that it can or will be shown upon another trial that any test of this bolt for tensile strength was made either by the manufacturer or installer. Indeed, they negative such a fact. The extent of their claims is that a test of the "heat" or batch of metal out of which this bolt was cast was in all probability made, and that it was not customary to make tests of individual bolts. This falls short of the proof required. The metal out of

which a bolt is cast may have the required tensile strength and yet there may be such a flaw in the casting as to render it entirely unsafe. That was the case with the bolt in question. It had a flaw in it that caused it, after a long use, to break with a load of 3,600 pounds. While the evidence showed that the bolt was worn some, yet the fact remained that it was defective from its inception owing to the large sand flaw in it, and that it was the defect and not its wear that caused it to break. Had a proper test of tensile strength been made before the bolt was installed it is quite probable that its weakness would have been discovered. This statement is not made in forgetfulness of the claim of defendant that bolts with somewhat similar flaws have been tested up to 47,000 pounds before breaking. Those bolts, however, did not break with a load of 3,600 pounds as this did.

The trial court, as we understand it, denied the motion largely on the ground that this issue of test of tensile strength was made on the first trial and that the so-called newly discovered evidence is merely cumulative upon that issue. We think the court properly so held. In any event there was no abuse of discretion in denying the motion because the offered proof did not claim to meet the burden cast upon the defendant for the reasons already stated.

*By the Court.*—Order affirmed.