MILLER SAW-TRIMMER COMPANY, Appellant, vs. CHESHIRE and others, Respondents.

*January 12—June 6, 1922.*

*New trial: After affirmance by supreme court: Newly-discovered evidence: Requirements: Discretion of court: Documents not produced at trial: Diligence.*

1. A motion for a new trial under sec. 2879, Stats., because of newly-discovered evidence can be determined on its merits by the trial court after the affirmance of the judgment by the supreme court, though a motion to set aside a judgment for inadvertence could not be.

2. A new trial will not be granted for newly-discovered evidence unless the moving party satisfies the court that the evidence came to his knowledge after the trial; that he was not negligent in seeking to discover it; that it is material to the issue; that it is not merely cumulative to testimony introduced on the trial; and that it is reasonably probable that a different result would be reached upon another trial.

3. The determination of the trial court granting or refusing a new trial will not be disturbed unless it is manifest that the discretion of the court has been improperly exercised; but where the trial court considered the evidence from the standpoint of whether it would produce a change of the opinion of the supreme court, he did not properly exercise the discretion conferred upon him.

4. The rules governing the granting or refusal of a new trial for newly-discovered evidence apply to a motion for new trial based on the ground of newly-discovered evidence which was made after the judgment.

5. In an action for specific performance of a contract to assign a patent, where a motion for a new trial was based on newly-discovered evidence which consisted of a file wrapper and contents relating to defendants' application in the patent office, the trial court properly held that the failure to obtain such evidence was due to plaintiff's lack of diligence, since it could have been obtained by subpœna *duces tecum* in the same manner in which the application itself was obtained, if plaintiff's counsel had deemed it to be material.

6. The fact that the affirmance of the judgment by the supreme court was put upon a ground which made certain documents not produced at the trial of greater evidentiary value than they would have had under the decision of the trial court, does not show that such evidence was newly discovered or excuse lack of diligence in seeking to produce it at the trial.

ESCHWEILER, J., VINJÉ, C. J., and DOERFLER, J., dissent.

APPEAL from an order of the circuit court for Milwaukee county: OSCAR M. FRITZ, Circuit Judge. *Affirmed.*

This case was once before this court and was reported in 172 Wis. 278, 178 N. W. 855. We shall not restate the facts stated there, but reference is made to the former opinion and the statement of facts here will be regarded as an addition to the former opinion so far as the statement of facts is concerned. Upon the *remittitur* of the record to the circuit court for Milwaukee county the plaintiff petitioned the circuit court for a new trial upon the ground of newly-discovered evidence. The material portion of the petition is as follows:

"II. That in the original proceedings in said cause plaintiff had to rely upon the disclosure of the contents of the two pending applications aforesaid made to it by the defendants therein, inasmuch as, under the rules of the United States patent office, all pending applications for patents are kept in the secret archives of the patent office, and are accessible only to the applicants, their assignees, or their

duly appointed attorneys of record; that accordingly in the proceedings before trial in said cause the said defendants were duly served with a writ of subpœna *duces tecum* issued at plaintiff's instance, and were required by the exigencies of the said writ to produce 'all applications for letters patent or any drafts or copies of such' relating to or describing '. . . any mechanism or device intended or adapted for use in the feeding or handling of paper;' also 'all written descriptions . . . and other material or memoranda . . . bearing upon or relating to any inventions . . . made, had, or required by the defendant *Edward Cheshire* . . . relating to the feeding or handling of paper;' and in response to said subpœna produced what purported to be a copy of said application, executed March 5, 1918, and the same was marked Plaintiff's Exhibit No. 2 (ultimately marked at the trial as Plaintiff's Exhibit No. 17); that at no time in the course of said *Cheshire's* examination before trial, and at no time during the trial, did it appear that any steps had been taken by the applicant *Cheshire,* or his assignees or attorneys, or by the officials of the patent office, changing or altering, in any respect, or separating into divisions said application so as to change or modify its condition as filed, and plaintiff and its counsel were led to believe, and did believe, that said application was and continued to be at the time of the trial in the same condition in which it appeared by the copy thereof furnished by the defendants as aforesaid; that, in like manner, when during the trial the defendants were called upon to produce the second application of *Cheshire* Serial No. 329976, filed October 11, 1919, they produced an alleged copy thereof which was introduced and marked Plaintiff's Exhibit No. 18, and plaintiff and its counsel were led to believe, and did believe, that said application was then, and at all times continued to be, in the condition shown by said copy, and that it had not been altered, changed, or acted upon by the patent office. A copy of said subpœna *duces tecum* issued to said *Cheshire* is hereunto annexed and marked Plaintiff's Exhibit A and made a part hereof.

"III. That plaintiff avers, and charges the fact to be, that the aforesaid conduct of the defendants in producing a part only of said application, Plaintiff's Exhibit 17, instead of the whole of said application and all papers and

documents connected therewith and forming a part thereof, in response to the exigency of the writ of subpœna *duces tecum* served upon them as aforesaid, commanding and requiring the production of 'all applications for letters patent, or any drafts or copies of such,' etc., relating to paper-feeding and handling mechanism, wilfully and intentionally withheld and suppressed evidence material and relevant to the issues in this cause to which the plaintiff was justly entitled, such conduct constituting a fraud upon the plaintiff, an attempt to defeat the administration of justice, and a virtual contempt of the process of this court.

"IV. That during the course of the trial in the circuit court, and in the arguments submitted in its behalf, both orally and in briefs, at the conclusion of the trial, and in the arguments submitted in its behalf, orally and by briefs, in the supreme court, plaintiff consistently and persistently contended that the printing presses disclosed in the aforesaid two applications of *Cheshire* were susceptible of subdivision into parts or groups of mechanisms, easily identified one from the other, and that the paper-feeding and handling mechanism disclosed in said applications were separate inventions capable of being segregated and made the subject of separate and independent applications and of separate patents, without reference to their attachment to any particular kind of printing press or impression devices with which they might be associated; that, on the other hand, during said trial and at all of said hearings, in both this court and in the supreme court, defendants with equal persistence contended for the integrality of the machines of each of such applications and for the unitary character of the inventions disclosed in said applications, and for the impossibility of segregating and separately applying for and obtaining patents on the paper-feeding and handling mechanisms of the machines of those applications.

"V. That recently, to wit, on or about the 6th day of November, 1920, the defendant *Edward Cheshire* advised the plaintiff that he had made and entered into a contract with the defendant *Simplex Machinery & Tool Company* wherein and whereby, in consideration, *inter alia*, of the assignment to said defendant *Simplex Machinery & Tool Company* of the said *Cheshire* invention afterwards disclosed in Plaintiff's Exhibit No. 17 aforesaid, said defendant

*Simplex Machinery & Tool Company* agreed to pay to said *Cheshire,* in addition to other considerations therein mentioned, a royalty of two and one-half per cent. (2½ %) of the selling price of all printing machines embodying the subject matter of said invention; that said *Cheshire* further stated that in violation of said contract the said defendant *Milwaukee Automatic Printing Press Company,* which had succeeded to the rights of *Simplex Machinery & Tool Company,* without the consent of said *Cheshire,* and against his protest, was about to close a contract with Miehle Printing Press and Manufacturing Company of Chicago (hereinafter called the Miehle Company), under which contract the exclusive rights to manufacture, use, and sell said *Cheshire* inventions disclosed in said applications, Plaintiff's Exhibit No. 17 and Plaintiff's Exhibit No. 18, were to be transferred to said Miehle Company in such manner as to defeat the right of said *Cheshire* to his said royalty of two and one-half per cent. (2½ %) in respect of printing machines manufactured and put out by said Miehle Company pursuant to said proposed contract; that said *Cheshire* represented that he feared that such action might be taken in his applications, Plaintiff's Exhibit No. 17 and Plaintiff's Exhibit No. 18, controlled, as such applications in fact were, by Messrs. Wilkinson and Huxley, who were also the attorneys and of counsel for the Miehle Company, as would emasculate them and render them not fully protective of the inventions involved in them, and thereby affect the royalties due him, said *Cheshire,* under said contract with the said defendant *Simplex Machinery & Tool Company* and the proposed contract between the defendants *Simplex Machinery & Tool Company* and *Milwaukee Automatic Printing Press Company* and the said Miehle Company; that thereupon a representative of the plaintiff company, Mr. Charles G. Cope, went to Washington with the said *Cheshire,* and, upon the said *Cheshire's* demand, as of right, to see said applications, inspection of said applications was permitted by the patent-office officials and copies taken of the same, which copies are now in plaintiff's possession and are hereunto annexed, marked Plaintiff's Exhibit B and Plaintiff's Exhibit C, respectively; that an examination of the whole record of said applications discloses the fact that, in the case of the application Plaintiff's Exhibit B (of which

Plaintiff's Exhibit No. 17 offered at the trial constitutes a part, and only a part), the first official action thereupon, made on the 7th of June, 1918, consisted of a letter from the commissioner of patents requiring a division of said application, said letter stating on page 2 thereof, among other things, the following:

"Division is required between the following groups of claims, each group relating to an independent invention, not correlated with the remainder of the claims:

"Group A, comprising claims 1–54, 61–100, and 118–124, relating to mechanism for carrying the sheet to and from the printing mechanism and various sub-combinations. . . .

"Group B, comprising claims 55–60, relating to table-elevating devices of general application. . . .

"Group C, comprising claims 101–107, relating to an interrupter for a printing cylinder. The type of interrupter used, or whether one is used at all, does not affect the remainder of the mechanism. . . .

"Group D, comprising claims 108–116, relating to a traveling cylinder printing press, which has an opposing movement given to the cylinder and type bed. . . .

"Group E, comprising claim 117, relating to a mounting for an inking roller. . . .

"No action on the merits will be given until the requirement of division is complied with.

"That the record of said application further discloses that on August 27, 1918, which was long before the trial of this action (December, 1919), the attorneys for the applicant, being Messrs. Wilkinson and Huxley, one of whom, Mr. Geo. L. Wilkinson, is of counsel for the defendants in this cause, made a responsive action in said application, excising therefrom all the claims save those embraced in Group A 'relating to mechanism for carrying the sheet to and from the printing mechanism,' and supplementing said amendment by the following 'Remarks' (page 3): 'Applicant has canceled the claims in Groups B, C, D, and E, set forth in the office action in response to the requirement for division, said claims having been canceled without prejudice, applicant reserving the right to file divisional applications covering the subject matter of said canceled claims.' . . . 'As now presented, it is believed that this case is in condition for an action on the merits, and the same is hereby re-

quested. Respectfully submitted, Wilkinson and Huxley, Attorneys for Applicant.'

"That the record of said application further shows that after all of the claims had been thus excised by amendment from said application, except the claims falling within Group A aforesaid, relating to paper-feeding and handling devices, said application was treated on its merits by the patent office in an action dated October 19, 1918; that at said last mentioned date, claim I of said application (typical of a number of others falling within the classification above referred to as Group A) read as follows: '1. In a printing press, the combination of stock supply means, a transfer table, and means for transferring stock from said stock supply means to said transfer table;' such claim, as appears on its face, not being identified with any particular kind of printing press; that the original bill of complaint in this cause was filed on or about the 26th day of June, 1919, as aforesaid, but it was not, as disclosed by the record of said application, until September 20, 1919, or three months after the filing of said bill of complaint, that said first claim was amended, by a letter of amendment of that date, in which it was sought to alter said first claim so as to limit it to a combination of the elements at first recited in it with a printing press of a particular description, to wit, one having 'a cylinder mounted for vertical rectilinear movement,' said amended first claim reading as follows: '1. In a printing press, the combination of stock supply means, a cylinder mounted for vertical rectilinear movement, a transfer table movable upwardly and downwardly with said cylinder, and means for transferring stock from said stock supply means to said transfer table;' that this effort on the part of defendants to amend said application *pendente lite,* with a view to · so phrasing its claims as to give color to their contention that *Cheshire* had only claimed to be the inventor of paper-feeding and handling devices in connection with a press having a cylinder with a vertical rectilinear movement, was wholly unwarranted and a fraud upon the rights of the plaintiff in said application.

"VI. That on examination by the defendant *Cheshire* and plaintiff's representative Mr. Cope on the occasion mentioned when the visit was made to the patent office, of the second *Cheshire* application hereinabove mentioned, namely,

application serial No. 329976, filed October 11, 1919, it was discovered that the first and only action therein, either by the patent office or in behalf of the applicant, was a requirement of division by the patent office, in an official communication dated February 14, 1920, in which communication it was stated as follows: 'Claims 1–27 and 58–60 are for a bed and cylinder movement, class 101, sub-class 269.' . . . 'Claims 28–33 and 50–54 are for stock motions or interrupters, class 101, sub-class 285.' . . . 'Claims 34–49 are for a feeding device, class 101, sub-class 272.' . . . 'Claims 55–57 are for grippers, class 101, sub-class 409.' . . . 'These four groups of claims are drawn to separate and independent inventions and division is required;' all as will more fully and at large appear by reference to the full copy of the history of said application, Plaintiff's Exhibit C, hereunto annexed and made a part hereof.'

"VII. That from the above recital of the history of the said two *Cheshire* applications it appears that at all times in the history of said applications the structures therein shown, described and claimed were regarded by the patent-office officials as divisible into separate groups of devices that were plainly independent of and segregable from each other, and not only susceptible of being covered by separate applications for patents but required to be so covered, if covered at all; furthermore, that in the case of the first-named application (being Plaintiff's Exhibit B, hereunto annexed, and a part only of which is embraced in Plaintiff's Exhibit No. 17 hereinbefore referred to), the requirement of division was acquiesced in and complied with by the applicant through his attorneys, Messrs. Wilkinson and Huxley, and all subject matter eliminated from said application by amendment, except that embraced in the claims of Group A, relating to 'mechanism for carrying the sheet to and from the printing mechanism' as aforesaid, or, in other words, relating specifically to the paper-feeding and handling mechanism; and that in the case of the second application (being Plaintiff's Exhibit C, hereunto annexed, and a part only of which is embraced in Plaintiff's Exhibit No. 18, hereinbefore referred to) a similar requirement of division, on similar lines, was made, though the same has not as yet been complied with.

"VIII. That the plaintiff alleges, and charges the fact

to be, that defendants herein, who alone had control of said applications and the right to examine and take copies of the same, wilfully withheld and suppressed the full record of said applications from the record of this suit with the intention to mislead and deceive, and with the result of actually misleading and deceiving both the trial court and the supreme court into believing that the paper-feeding and handling mechanisms involved in the said two *Cheshire* applications formed indivisible and non-segregable parts of said *Cheshire's* printing machines that were not susceptible of being covered by separate applications for patent and of being patented as separate entities; that in the brief filed in the supreme court signed by Frank M. Hoyt, attorney for respondents, and George L. Wilkinson, of counsel for respondents, is found the following, on page 10 thereof: 'If in plaintiff's opinion the cylinder printing presses embody any inventions in paper-feeding and handling devices, plaintiff would have most assuredly had applications for patents prepared embodying the paper-feeding, or registering, or delivering mechanisms of the *Cheshire* cylinder printing presses, and would have sought an order of the court directing *Cheshire* to execute such applications and to assign them to plaintiff.

"'Plaintiff's failure to proceed in such way can be explained in no other way than that it knew that the *Cheshire* cylinder printing presses embody no inventions in paper-feeding and handling devices capable of being patented *per se.*'

"Again, on page 11, the following: 'The offering in evidence by plaintiff of the said *Cheshire* applications *as originally filed,* therefore, falls far short of sustaining the burden on plaintiff to prove that the paper-feeding and handling mechanisms forming parts of the *Cheshire* automatic cylinder printing press are in themselves separate and operative entities.'

"Again, on page 11, the following: 'Plaintiff having utterly failed to produce evidence that the *Cheshire* cylinder printing press embodies any inventions in its paper-feeding and handling mechanism *per se,* cannot now ask to have the court presume that which plaintiff did not prove.'

"Again, on page 13, the following: 'The paper-feeding, registering, and delivering means which form operably in-

separable parts of the said automatic printing press cannot therefore be assigned to plaintiff except by assigning to it the entire automatic cylinder printing press which plaintiff is clearly not entitled to under the contract in suit.'

"And again, on page 13, the following: 'Plaintiff has not proved and does not contend, that the paper-feeding, registering, and delivering means of the *Cheshire* automatic cylinder printing press constitute operative structures *per se,* and unless they are operative structures *per se* they are not inventions patentable separately from the automatic cylinder printing press;' all of which statements of said brief embody suggestions and implications as to the indivisibility of the paper-feeding and handling mechanism from the rest of the printing mechanism and as to the impossibility of covering said feeding and handling mechanism, *per se,* by separate patents, which statements were not justified by the facts of the case ias they must have been known by defendants to exist from the history of said application, the official requirement of division, and the defendants' compliance with such requirements.

"IX. That the full contents of the *Cheshire* applications disclosed in Plaintiff's Exhibit B and C, or more of the contents of said applications than was disclosed in the copies of said applications embodied in Plaintiff's Exhibits 17 and 18 produced by the defendants at the trial of this action, were utterly unknown to plaintiff or its counsel, or any one associated with or connected with the plaintiff, until the disclosure thereof by the inspection of said applications by plaintiff's representative, Mr. Cope, on the 1st day of December, 1920, when the visit to Washington was made as aforesaid; that plaintiff and its counsel had reason to believe, and did believe, that Plaintiff's Exhibits 17 and 18 embodied, in full, the contents of said applications; that plaintiff could not by the exercise of reasonable diligence have obtained access to the full contents of said applications because all pending applications for patents are, under the rules of the patent office, kept in strictest secrecy, and are accessible only to applicants, their assignees, attorneys, or other duly authorized representatives, rule 15 of the patent office reading as follows: 15. 'Pending applications are preserved in secrecy. No information will be given, without authority, respecting the filing by any

particular person of an application for a patent or for the re-issue of a patent, the pendency of any particular case before the office, or the subject matter of any particular application, unless it shall be necessary to the proper conduct of business before the office, as provided by rules 97, 103, and 108, except that authorized officers of the army and navy will be allowed during the war to inspect cases which in the opinion of the commissioner disclose inventions that might be of value in the prosecution of the war, after having filed a duly executed oath with the commissioner that no contents of any application will be divulged except as it may become necessary in the prosecution of the war;' the exception of said rule, relating to rules 97, 103, and 108, dealing with applications for patents which are involved in contested interferences in the patent office affecting such applications and applications or patents of other parties, a condition which has not existed with respect to the said two patent applications, Plaintiff's Exhibits B and C; that plaintiff is advised and believes, and therefore avers, that the full contents of said applications, Plaintiff's Exhibit B and Plaintiff's Exhibit C, constitute material and substantial evidence pertinent to what has become the critical issue in this cause, and such evidence as that, had it been produced at the trial, would have disclosed a state of facts other than that appearing from the record submitted to the trial and appellate courts, and would, as plaintiff is advised and believes, and therefore avers, have had controlling weight with the supreme court and caused it to have ordered a judgment to be entered in favor of the plaintiff.

"X. Plaintiff states that the evidence so offered to be produced at the new trial, if one is granted, is (a) newly-discovered evidence and is of a documentary character; (b) that plaintiff used due diligence to produce such evidence on the former trial; (c) that such evidence is material to the issues involved in said action; (d) that such evidence goes to the merits of the case; (e) that such evidence is not cumulative of any other testimony produced at said trial, but evidence of new facts; (f) that such evidence is such as would probably change the result of the trial in the circuit court and in the supreme court.

"Wherefore plaintiff prays that the judgment or decree entered in this court be set aside, that the cause be re-

opened and a new trial ordered on the evidence already adduced and on the newly-discovered evidence herein referred to, and that a judgment or decree be entered for plaintiff directing that the defendants and each of them be required to transfer to the plaintiff (1) the whole of the application embodied in Plaintiff's Exhibit B, limited as it now is to Group A, aforesaid, or, in other words, to inventions relating strictly to paper-feeding and handling mechanisms; also, (2) so much of the application Plaintiff's Exhibit C as relates to paper-feeding and handling; and (3) for such other and further relief as may seem equitable and just."

The facts set out in the petition are undisputed. This does not mean that certain allegations as to inferences made in the petition are admitted.

Upon the hearing the circuit court for Milwaukee county denied the prayer of plaintiff's petition. In denying the petition the circuit court said:

"The failure to discover the alleged newly-discovered documentary evidence in time for use on the trial was due to such a lack of diligence (in a technical sense) in preparing for the trial as defeats plaintiff's application. *Kiefer-Haessler Hardware Co. v. Paulus,* 149 Wis. 453, 135 N. W. 832. Ever since the decision filed on February 19, 1919, permitting the plaintiff to proceed with the adverse examination of *Cheshire,* it was in position to require the defendants to produce for its inspection the documents upon which it now places such great weight. When *Cheshire* was asked for the application for the patent, a copy thereof was produced. Neither he, nor any of the other defendants or their counsel, was ever requested to produce for plaintiff's inspection the file wrapper, or the entire files of the proceedings in the patent office subsequent to the filing of the application. There was no refusal, evasion, or deception and no trick or artifice by the defendants or their counsel which misled or prevented the plaintiff from obtaining all of those files, if their inspection had been desired by the plaintiff at that time, or at any time before or during the trial. The omission of the defendants and their counsel to voluntarily bring all of those documents to the attention of plaintiff's counsel, who had not requested an inspection

of the particular documents upon which they now desire to rely, does not constitute a wilful suppression or withholding thereof by the defendants or their counsel."

The circuit court was of the view, also, that

"There is now no substantial ground for believing that the division of claims suggested by a patent-office official, as a matter of patent-office practice, and the acquiescence by the applicant's solicitors, as a matter of expediency, would probably change those conclusions."

From the order denying the plaintiff's motion for a new trial this appeal is taken.

For the appellant there were briefs by *Austin, Fehr, Mueller & Gehrz* of Milwaukee, attorneys, and *Melville Church* of Washington, D. C., and *Frank T. Boesel* of Milwaukee, of counsel, and oral argument by *Mr. Church, Mr. Boesel,* and *Mr. Arthur A. Mueller.*

For the respondents there was a brief by *Frank M. Hoyt* of Milwaukee, attorney, and *George L. Wilkinson* and *John C. Slade,* both of Chicago, of counsel, and oral argument by *Mr. Hoyt* and *Mr. Slade.*

ROSENBERRY, J. On behalf of the plaintiff the following errors are assigned:

1. The court erred in holding that there had been a failure by the plaintiff to exercise due diligence to discover the evidence forming the basis of the present petition.

2. The court erred in holding that the new evidence is not such as would probably have changed the conclusions arrived at by the supreme court had such evidence been before it.

3. The court erred in denying the plaintiff's motion.

On behalf of the defendants it is urged that, the judgment of the circuit court having been affirmed by this court on appeal, it became in effect the judgment of this court and the circuit court therefore had no power to vacate the judg-

ment so affirmed and award a new trial upon the ground of newly-discovered evidence or upon any other ground, without leave from this court first granted.

Plaintiff's motion in this case is based upon sec. 2879, Stats., which provides that a motion for a new trial founded in whole or in part upon newly-discovered evidence may be made at any time within one year from the verdict or findings. Other provisions of the section relate to the affidavits, papers, and matters upon which the motion may be based.

Sec. 2832, Stats., provides that the court may in its discretion, upon such terms as may be just, at any time within one year after notice thereof, relieve a party from a judgment, through his mistake, inadvertence, surprise, or excusable neglect.

In *Ean v. C., M. & St. P. R. Co.* 101 Wis. 166, 76 N. W. 329, a judgment of the circuit court had been affirmed by this court on appeal, and within one year from the date of its entry the trial court set it aside under the provisions of sec. 2832. It was there held, referring to the cases of *Patten P. Co. v. Green Bay & M. C. Co.* 93 Wis. 283, 66 N. W. 601, 67 N. W. 432; *State ex rel. Turner v. Circuit Court,* 71 Wis. 595, 38 N. W. 192; and *Whitney v. Traynor.* 76 Wis. 628, 45 N. W. 530, that a judgment entered in accordance with the mandate of the supreme court is in legal effect the judgment of the supreme court and that it is as effectually *res adjudicata* as a case where the judgment is affirmed. The *Ean Case* was followed in *Crowns v. Forest L. Co.* 100 Wis. 554, 76 N. W. 613.

In *Hansen v. Milwaukee C. & G. Co.* 157 Wis. 514, 147 N. W. 1001, there was a judgment of nonsuit in the circuit court, which judgment was affirmed by this court. While the record in the case was still in this court the appellant moved for an amendment to the mandate which would give to the trial court power to entertain and decide an applica-

tion for a new trial of the case based upon affidavits purporting to show newly-discovered evidence.    The court said:

"Notwithstanding the mandate of affirmance, we do not understand that the affirmance affects in any way the power of the trial court in the matter."

In the case of *Dibbert v. Metropolitan Inv. Co.* 158 Wis. 69, 147 N. W. 3, the judgment of the circuit court was affirmed by the supreme court.    The verdict was rendered June 25, 1913.    The mandate affirming the judgment of the circuit court was dated October 6, 1914.    Before the expiration of one year from the date of the verdict the defendant and appellant made a motion for a new trial in the circuit court on the ground of newly-discovered evidence.    After the mandate affirming the judgment was filed, a motion was made asking this court to modify its mandate so as to order a new trial, or, in the alternative, to so modify it that the circuit court might do so if satisfied that the motion for a new trial should be granted.    The court said:

"The merits of the motion should be passed upon by the lower court, and the mandate is modified so as to affirm the judgment without prejudice to the right of the defendant to have its motion for a new trial determined by the circuit court."

It is argued that there is no logical difference between a motion to relieve a party from a judgment on account of "mistake, surprise, or excusable neglect" and a motion for a new trial upon newly-discovered evidence, and that the decisions, therefore, construing the two sections are inconsistent, and that logically the conclusion reached in the *Ean Case* should be adhered to in applying both statutes.    We think there is a fundamental distinction between secs. 2832 and 2879, Stats.    While in certain instances the exercise of the discretion conferred upon the circuit court by sec. 2832 may result in relief against a judgment, it is a matter of discretion with the trial court, whereas under the provisions

of sec. 2879 it is the right of a party to have a motion for a new trial founded upon newly-discovered evidence determined by the court upon its merits. Under sec. 2879 the determination relates to a substantive right, whereas under sec. 2832 the motion is addressed to the sound discretion of the court and is an appeal to the favor of the court. The motion in the case at bar was based entirely upon the claim of newly-discovered evidence and it is considered that the trial court correctly entertained the same and had power to grant or deny the motion.

A new trial will not be granted on the ground of newly-discovered evidence unless the party moving therefor satisfies the court, first, that such evidence came to his knowledge after the trial; second, that he was not negligent in seeking to discover it; third, that it is material to the issue; fourth, that it is not merely cumulative to testimony introduced on the trial; and fifth, that it is reasonably probable that a different result would be reached upon another trial. *Birdsall v. Fraenzel,* 154 Wis. 48, 142 N. W. 274, and cases cited. Nor will a determination of the court below granting or refusing a new trial be disturbed unless it is manifest that the discretion of the court has been improperly exercised. *Wilson v. Plank,* 41 Wis. 94.

These rules apply to a motion for new trial upon the ground of newly-discovered evidence made after judgment. *Milwaukee W. Mills v. Winsor,* 157 Wis. 538, 147 N. W. 1068; *Defiance M. Works v. Gill,* 170 Wis. 477, 175 N. W. 940.

Even in a criminal case it is said:

"The presumption is always that by due diligence the parties to the action can discover and produce relevant and material evidence. It is for this reason that the motion for the new trial on the ground of newly-discovered evidence is received with great caution and not entertained favorably." *Musso v. State,* 160 Wis. 161, 151 N. W. 327.

Upon the original trial the trial court was of the opinion

that the prayer of the complaint should be denied because it would be unconscionable and inequitable to decree specific performance of the contract of January 14, 1911, for the reasons stated (172 Wis. 278, at p. 291, 178 N. W. 855), but held that the invention referred to was one covered by the contract between the parties, and upon appeal to this court it was held that the contract was not unconscionable and inequitable but that the contract did not cover the invention in question.   In passing upon the motion for a new trial the trial court was of the opinion, therefore, that unless the new evidence referred to constituted substantial grounds for believing that the result would be changed upon another trial, it was confined to consideration of whether or not the introduction of such new evidence would produce a change in the opinion of this court.   We regard this as an erroneous view of the law.   The question is not whether the opinion of a particular judge or a particular court may be this or that.   The question is whether or not, as a matter of law, the introduction of the newly-discovered evidence into the record affords substantial grounds for saying that, as a matter of law, a different result might be arrived at. The dismissal by the circuit court of consideration of that element of the case for the reason that it could not say that the result in this court would be changed, was not a proper exercise of the authority conferred upon the court by the statute.   Were that the only ground upon which the order denying the motion was based, we should feel obliged to reverse the determination of the trial court for the reason stated.

The trial court found that there was no refusal, evasion, or deception and no trick or artifice by the defendants or their counsel which misled or prevented the plaintiff from obtaining the file wrapper and contents referred to in the petition, and that the failure to discover the alleged documentary evidence was due to such a lack of diligence as should defeat the plaintiff's application.   With this conclusion we agree.   The case was very ably tried upon both

sides and each of the parties was represented by attorneys. who were skilled in all matters pertaining to the law of patents and practice before the patent office. If there was in the opinion of counsel a defect in the subpœna *duces tecum* referred to in the petition, due to the lack of experience in matters of that kind by the attorneys who drafted it, it must have passed under the scrutiny of other counsel before the conclusion of the trial, and had counsel desired the production of the file wrapper and contents, counsel were well advised as to the steps necessary to procure the production of these documents upon the trial, and their failure to have them produced can be accounted for upon no other theory than that they were not considered to be of any probative force or at least of such slight weight as to make their production immaterial so far as the final result was concerned, and their failure to have them produced was therefore due to a lack of diligence in the legal sense. *Wilson v. Plank,* 41 Wis. 94.

While it is true that the plaintiff did not know the exact state of facts disclosed by the file wrapper and contents, it did know that there, if anywhere, was to be found the evidence relating to any separation of the various claims made by the defendant *Cheshire* in his application for a patent, yet it took no steps to require its production.

In the *Ean Case, supra* (101 Wis. 166, 76 N. W. 329), it was held that the fact that the judgment here was based upon grounds other than those upon which the court below placed its decision did not amount to a case of "surprise" which entitled the party to relief. So in this case, the fact that the decision of this court was based upon grounds that give the contents of the file wrapper a greater evidentiary value than they would have had if the case had been disposed of along the lines of the trial court's decision, does not make it newly-discovered evidence nor excuse the plaintiff for its failure to require the production of the documents in question.

*By the Court.*—Order affirmed.

ESCHWEILER, J. (*dissenting*).    The only reason why the plaintiff did not have judgment in its favor on the first appeal of this case (172 Wis. 278, 178 N. W. 855) was because of the view that this court took, contrary to that of the trial court, that there could not be segregated an invention relating to the feeding and handling of paper as distinguished from a cylinder printing press from the original application.

It now appears as an uncontradicted fact that that which was so held by this court to be impossible was, by an examiner of the United States patent office, prior to the commencement of this suit, suggested could and directed should be done and was done by the defendant *Cheshire* through his attorney by his amendment.    That amendment retained out of the 124 claims originally filed a certain number designated by the examiner as "relating to mechanism for carrying the sheet to and from the printing cylinder."    Almost an exactly similar segregation was made by the trial court. This action by *Cheshire* was a substantial and vital admission that the thing could be done which plaintiff claimed would bring the application within the terms of the contract.    This substantial fact was concealed from the trial court and from this court by the wilful withholding of a document relating to the invention that was called for by the subpœna served upon *Cheshire* on his examination under sec. 4096, Stats.    No question can be raised but that the terms of the subpœna were broad enough to include this amendment.    Its being withheld is attempted to be justified solely on the ground that the demand of the subpœna was not sufficiently technical or specific in its description of that document.

This court has of late years been priding itself upon vying with the legislature in sweeping away technicalities that interfere with the granting or obtaining of justice.    The present holding savors strongly of a reversion.

Miller Saw-Trimmer Co. v. Cheshire, 177 Wis. 354.

By sec. 2405*m*, Stats., created by ch. 214, Laws 1913, where, upon appeal or writ of error, it shall appear that for any reason *justice has miscarried,* this court may, in its discretion, reverse the rulings of a lower court regardless of whether or not proper motions, objections, or exceptions appear in the record.

We have here a situation where we are now confronted with a fact, knowledge whereof was peculiarly with the defendants and not some third person, and withheld by defendants, and which demonstrates that the plaintiff and not the defendants is entitled to judgment. The unjust judgment, however, must stand because, and only because, of what is designated as a technical or legal lack of diligence on plaintiff's part. But one case is cited in the majority opinion on this proposition, *Wilson v. Plank,* 41 Wis. 94. An inspection of that case discloses that we are now overruling rather than following that case. There the trial court, as here, denied the motion for a new trial. There this court held that such denial was an abuse of discretion. Some of the facts in that case relied upon were facts in the nature of an admission by the opposite party contrary to his position on the trial, and the court there uses as an illustration that where the issue is presented of payment of a note and there is subsequently disclosed a deliberate admission of plaintiff that the note had been paid, it would unquestionably be a proper basis for granting a new trial. The illustration and that case and the situation here are parallel.

I think it was the duty of the court to hold upon the unquestioned facts here presented that the plaintiff is entitled to have the same now considered and judgment rendered conforming with what the real facts and the truth require and justice demands.

I am authorized to say that Mr. Chief Justice VINJE and Mr. Justice DOERFLER concur in this dissent.